## Case No. 5,603.

### GOODYEAR DENTAL VULCANITE CO. v. WILLIS.

[1 Ban. & A. 568; 1 Flip. 388; 7 O. G. 41.][1]

Circuit Court, E. D. Michigan. Nov., 1874.

PATENT LAW—DECISIONS OF CO-ORDINATE COURTS—WHEN BINDING — CASES ALREADY DECIDED EXAMINED AND DISCUSSED IN THEIR BEARINGS.

1. The principles upon which the several circuit courts of the United States are bound by the decisions of each other, examined and discussed.

2. The adherence to decisions is by no means confined to those which precede the case in question in the same tribunal. Those of co-ordinate courts are equally authoritative.

3. The circuit courts of the United States, although divided in jurisdiction geographically, constitute a single system; and, where one of those courts has fully considered and deliberately decided a question, every suggestion of propriety demands, that it should be followed, until modified or reversed by the appellate court.

[Approved in Searls v. Worden, 11 Fed. 502. Cited in Reed v. Atlantic & P. R. Co., 21 Fed. 284; Eastern Paper-Bag Co. v. Nixon, 35 Fed. 753.]

4. The circumstances of the appeal to the supreme court, in the case of Gardner v. Goodyear Dental Vulcanite Co. [21 Lawy. Ed. 141], considered.

5. The rule that the use of one material, instead of another, in constructing a known machine, is, in most cases, so obviously a matter of mere mechanical construction. that it cannot be called an invention, is not applicable where the substituted material produces a new and useful result, or an increase of efficiency, or a decided saving in the operations of the machine, and cases may exist where the degree of superiority may be such as to amount, within the law of patents, to a difference in kind. Hotchkiss v. Greenwood, 11 How. [52 U. S.] 248, and Hicks v. Kelsey, 18 Wall. [85 U. S.] 670, cited and examined.

[Cited in Goodyear Dental Vulcanite Co. v. Preterre, Case No. 5,596; Phillips v. Detroit, Id. 11,100; Hancock Inspirator Co. v. Regester, 35 Fed. 63.]

6. Cummings applied for a patent in April, 1855, and was rejected in 1856. He filed a new application in 1864, and the patent was then granted. The invention went into public use in 1859: *Held*, that where successive applications are made for a patent, and there is no proof of actual abandonment, the subsequent application will be deemed a continuation of the first.]

[Cited in Pelton v. Waters, Case No. 10,913; Colgate v. Western Union Tel. Co., Id. 2,995.]

In equity. This was a bill filed against the defendant [George Willis], a dentist, for infringement of re-issued letters patent No. 1,904, granted to the Dental Vulcanite Company, assignee of John A. Cummings, for "improvement in artificial gums and palates." The claim in the patent is for "the plate of hard rubber or vulcanite, or its equivalent, for holding artificial teeth, or teeth and gums, substantially as described."

[1][Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and by William Searcy Flippin, Esq., and here compiled and reprinted by permission. The syllabus and opinion are from 1 Ban. & A. 568, and the statement is from 1 Flip. 388.]

Cummings filed his caveat May 14, 1852. Applied for a patent April 12, 1855. This application was rejected May 19, 1855, and again rejected August 14, 1855, and again rejected by the commissioner of patents February 6, 1856. On March 25, 1864, a renewed application was filed. On April 7, 1864, the patent office wrote to Cummings acknowledging that injustice had been done in the former rejection, and the patent was thereupon allowed, and was issued on June 7, 1864 [No. 43,009]. There was evidence that tended to show poverty on the part of the inventor and efforts by him to raise money to prosecute his application during these periods. The invention went into public use about 1859.

Benjamin F. Lee, for complainants.

John F. Follett and Calvin C. Burt, for defendant.

EMMONS, Circuit Judge. In ordinary circumstances, the condition of judicial opinion in reference to all the points involved in the record would render unnecessary their discussion upon principle, and in a case where such rulings have been so numerous, and directly upon the points, and so elaborate in argument, it is unusual to do more than refer to them generally, as settling the points in issue. Such, however, is the exceptional feeling and excitement existing in the minds of the numerous defendants in suits brought on this patent in this and adjoining districts, resulting, we believe, from the want of knowledge on their part of the real history of previous litigations, and the character and number of opinions which have been already pronounced, that it is deemed a duty by my brethren and myself to reproduce that which we are well aware is already familiar to the bench and bar. It will attract the attention here of all those interested in these litigations, while the sources from which such information is to be obtained are inaccessible to, or at least are not examined by, them. It was asserted with much earnestness and confidence by defendant's counsel that a careful review of the judgments already pronounced sustaining the complainants' patent, and contrasting the record before us with those upon which such opinions were based, would result in our taking up the questions before us and deciding them upon principle, wholly unembarrassed by judicial action elsewhere. We have listened for three days to an argument of great ability and research, and with much confidence retain the opinion we entertained at the outset, that in all the subordinate federal jurisdictions these questions should be deemed at rest until the court of last resort should reverse some of the judgments already rendered. We think the learned counsel for the defendant much underrated the effect which it is our duty to give to judgments pronounced by co-ordinate courts, where precisely the same points are brought

in litigation before us. The learning upon this subject is familiar, but the motives with which we discuss these matters at all will be subserved by referring to a few of the leading judgments upon this subject here. Those to which we refer have applied the principle in patent cases, but it is by no means peculiar to them. It is a principle of general jurisprudence, a disregard of which would produce a conflict of opinion in the federal judiciary, alike unseemly and impolitic.

In Washburn v. Gould [Case No. 17,214], Justice Story, sitting in the Massachusetts circuit, said: "The rule of comity always observed by the justices of the supreme court in cases which admitted of being carried before the whole court was to conform to the opinions of each other, if any had been given." Justice McLean had previously given a ruling upon the same point in the Ohio circuit in Brooks v. Bicknell [Id. 1,944], and Justice Story therefore said, "although his mind was not without much difficulty on this point, he should rule for the plaintiffs, in accordance with the opinion of Mr. Justice McLean." In American Wood Paper Co. v. Fiber Disintegrating Co. [Id. 320], before Benedict, J., Eastern district of New York, there had been previous suits on the same five patents in other districts, and especially a suit in the Eastern district of Pennsylvania, which decided the points in issue as to two of the patents. Judge Benedict said, as to these two patents, "The determination of the court in the case referred to furnishes an authority from which I should not feel at liberty, had I the inclination, to dissent." In Goodyear v. Berry [Id. 5,556], Leavitt, J., Southern district of Ohio, a patent had been sustained in several other circuits. Judge Leavitt says: "In so far as principles involving the validity of these patents have been settled by these decisions, they will be regarded as final and authoritative on this court." In Tighlman v. Mitchell [Id. 14,042], Southern district of New York, Blatchford, J., quotes with approbation our remarks in Tighlman v. Werk [Id. 14,046], Southern district of Ohio, 1868, in which it is said, "Although the record in this case in reference to some views which a superior court may possibly take contains some material additional proofs, still they are not such as to authorize the same court to overrule its former deliberate adjudications, and to disregard the judgments of a co-ordinate one in a case in all respects substantially like it." In Goodyear Dental Vulcanite Co. v. Root [Id. 5,597], Justice Hunt, sitting in the Northern district of New York, considers as authoritative the previous decisions in Massachusetts on the same patent. To the support of the generality sustained by these judgments it is unnecessary to say that numerous citations might be added, all showing that, in the opinion of the most enlightened jurists, we should be guilty of grossly violating well-established judicial usage and propriety should we disregard the adjudications already made in reference to the validity of the patent before us.

The principle which inclines a court to adhere to its own decision of a similar point, although subsequently convinced it was erroneous, though not in all respects applicable here, furnishes a strong analogy, and a reason on which our own actions should be based. See Ram, Leg. Judgm. 203 et seq. It there abundantly appears that the adherence to decisions is by no means confined to those which precede it in the same tribunal. Those of coördinate courts are equally influential. The queen's bench, common pleas, and the exchequer, where there is a common appellate court to review the decisions of each, follow with the utmost respect each other's adjudications.

Upon reasons having much influence here, appellate courts often follow a series of adjudications made by subordinate tribunals where they have been acquiesced in, and have become, in some sense, a rule of property. It is not because they are obligatory but from the unfitness of shifting rules. This is by no means closely applicable here, where judgments are recent and refer to the individual rights of the complainant. But many of the evils, it is quite apparent, which this class of judgment seeks to avoid would be produced should we disregard the rule. In the elaborate treatment of this general subject in the book to which we have referred, both by the English and American authors, it is significant that they make no distinction between prior decisions of the same and coördinate tribunals. It is enough to call for the application of the principle that the courts have the same jurisdiction under the same government to decide the same points that there is a common appellate court finally to adjust the difference between them.

If one system of coördinate courts more than another calls for the application of this general principle it is that of the circuit courts of the United States. They all have similar special jurisdiction, and are all, in an eminent degree, looked to for all those rules of right and property created under the federal statutes, and in reference to the subjects coming within the federal constitution. Although divided in jurisdiction geographically, they constitute a single system; and when one court has fully considered and deliberately decided a question, every suggestion of propriety and fit public action demand it should be followed until modified by the appellate court.

The comment at the bar upon this subject assumed that the final decrees and elaborately-reasoned decisions of circuit judges, with full citations and criticisms of authorities, often involving the entire history of the law upon the subject discussed, are to be ranked with what are termed "nisi prius decisions." They are in all respects judgments in banc. They not only have the deliberation and care

of judgments in the high courts of chancery in England and this country, but the court of itself bears the same relation to the whole judicial system that such courts do to those in which they exist. There is but one appellate court above them. A superior tribunal also reviews the judgments of the English chancery, and so of nearly all the like state tribunals.

Although we would by no means confine our acquiescence in the decisions of our brother judges to cases where the particular patent has been adjudged to be valid, or that a particular device infringes upon it, still we think that eminently beyond other cases is the rule applicable to them. The right of the complainant is a special franchise granted by the political power. A special organism is created for the purpose of ascertaining his right to the grant. When issued, the several federal courts are authorized to review the rectitude of this action, and from their determination an appeal lies to the court of last resort. It is an indivisible system for ascertaining the rightfulness and the limits of the patent, and when, in any coördinate department of it, judgment has been pronounced, that duty should be deemed performed until reversed by an appellate tribunal. It would present an unseemly spectacle for the same governmental grant to receive half a dozen different constructions in as many coördinate courts, all authorized to define it and inform the citizens what it means, and all having the force of law cotemporaneously under the same government. We cannot speak with great certainty, but do affirm with much confidence, that the expenses paid in our country for patent litigations are rapidly approximating the entire sum demanded for royalties. Until some special tribunal is instituted for the determination of these questions, and some general mode of reviewing these public grants, which shall test definitely the rightfulness of the grants, it will result in a large saving of money to the great masses of our citizens who are using these improvements, to let them and their advisers of the profession understand that a fair and full examination in one court, followed by a judgment, will, in the other coördinate tribunals, be acquiesced in as law, if there is no appeal and reversal.

It is said a present party defendant before the court could not have appealed from the former judgment. The court, as this one has repeatedly done, will carefully guard against any such hardship as to conclude the citizen by a proceeding to which he was not a party, of which he had no notice, and where, in fact, no appeal has been taken. If a desire by a defendant is expressed to test in a superior court the rectitude of what has been already adjudicated, and a complainant should refuse to stipulate that the proofs taken in another cause might be filed in the one pending, the rule would not be followed in the granting of preliminary injunction. Nor is there any hardship upon the complainant.

If he insist that the record upon which a former judgment is rendered is full and fair, it is but just that he should suffer it to be imported into a present proceeding before he could ask a preliminary injunction. The defendant can then examine, and if he desires to add to it before the final hearing he can do so; if not, he can appeal to the supreme court upon the record as it is, and test the validity of what has been decided. Such a practice we believe far more beneficent and inexpensive to the defendant as it is economical of the time of the court.

The following decisions, noticed, we think, in the order in which they were made, every one of them upon records precisely like that before us, or less favorable to the complainants, decide (most of them with much fullness of argument) every point necessary to authorize a decree for complainants. In Dental Vulcanite Co. v. Wetherbee [Case No. 3,810], before Justice Clifford, in 1868, the bill was filed to restrain an infringement of the patent now before us. The defendant, there as here, insisted that the patent was invalid because it did not embrace that which was the subject of a patent; that if it did, it was void for want of novelty, and that Cummings was not the inventor; that if he invented, he abandoned it; that there was a forfeiture of his rights, if any he had, under the statute, because he suffered it to go into use more than two years before he applied for his patent; that the reissue was void, because not warranted by the original patent. The cause was argued by counsel as eminent as any in the nation. Justice Clifford, after taking much time for deliberation in a painstaking judgment, overruled every objection taken by the defense. Goodyear Dental Vulcanite Co. v. Gardner [Id. 5,592] was a similar case before the learned justice, in 1868, and the same defense, among others, was substantially taken. The application for a preliminary injunction was argued by B. R. Curtis and Causten Browne, for complainants, and B. F. Thurston and S. D. Law and John A. Foster, for defendants. It is seldom that more professional ability is brought to the discussion of a similar application. Justice Clifford again, in his judgment, sustained the patent and overruled all the objections to it. See Pamph. Rep. of Case. This cause was subsequently brought to final hearing on pleadings and proofs; and in Goodyear Dental Vulcanite Co. v. Gardiner [Id. 5,591] will be found the opinion of Justice Clifford, rendered in favor of complainants after much deliberation, leave having been expressly given the respondents to re-argue the questions of law and fact presented in the Wetherbee Case. We will note, in connection with this case in the supreme court, the imputations cast upon it by the defense, observing here only that there is no accusation of impropriety in the case, before or at the time of the motion for interlocutory injunction.

In Goodyear Dental Vulcanite Co. v. Smith

[Id. 5,598] the same defenses were in evidence as in the case now before us, the records being identical with the exception of a small amount of additional testimony on the part of the defense in this case, of so little importance that it was not noticed at the bar by either side. The cause was argued at great length by able counsel before Judge Shepley, who rendered an elaborate judgment in favor of complainants. In Goodyear Dental Vulcanite Co. v. Root [supra] the same questions were presented to Justice Hunt, sitting in the Northern district of New York, who, after argument, again sustained the patent. Subsequently, in suits by the same complainants against Charles S. Stockton and Frank A. Cummings, argument was had by the same counsel on the same record as in the Smith Case, before Judge Nixon, in the district of New Jersey, who again sustained the patent at September term, 1874. A decree in favor of complainants against William H. Gates was granted at October term, 1874, on the same record as in the Smith Case, before Judges McKennan and Cadwalader, in the Eastern district of Pennsylvania.

The case of Goodyear Dental Vulcanite Co. v. Gardner [supra] was appealed to the supreme court, and every ruling necessary for the support of the judgment in the court below affirmed by that tribunal. The effect of this judgment as an authority here is earnestly assailed, because the court, before the opinion was actually delivered, although judgment had been rendered, dismissed the appeal. We do not see, in the reasons for this dismissal, anything which decreases the obligation on our part to follow the rule of law necessarily involved in the judgment. The complainants, in the court below, for the purpose of securing an argument and a hearing, had advanced money for the fees of the defendant's counsel. For this reason the appeal in the supreme court was dismissed; but before this fact was brought to the attention of the court, the cause had been fully argued and judgment rendered as in other cases. The circumstances under which the defense was prosecuted insured more than ordinary diligence on the part of counsel. The record before us shows that they were retained by the associated dentists, in convention at New York. They received a retainer in hand, with the promise of a large conditional fee of between $15,000 and $20,000, in case they succeeded in reversing the decision of the court below. The fact that money had been advanced by these complainants was fully stated to this association, and, after much deliberation and advice of their counsel, they elected to test the questions at issue upon the record as it then remained in the supreme court, because they were advised that no better one could be made for their interests. Gardner, at that time, was well understood by all parties in interest to be but a nominal defendant. The real parties in interest, who alone were prosecuting the defense, were fully advised of every fact, and in circumstances as well calculated to insure a favorable result as any which by any possibility could be presented upon the known facts, the case was decided against them. This judgment, as evidence of the law, and of what the court of last resort must evidently decide in like case, is obligatory upon us here. No such counter imputation has been made of the bar, and there may be facts outside of this record which would render such a suggestion extremely unjust to the real parties in interest, and who alone promoted the defense in the supreme court; but if all the conditions are before us, it would seem that a case of much ill faith on their part is presented. They were fully apprised of the facts. The complainants knew that they were so apprised of them. Both sides were equally cognizant of the just and necessary rule upon which the appeal after decree was dismissed. We are constrained to say that we do not see how, with anything like honor, they could refuse to abide by a judgment fairly obtained, with full argument, in circumstances to which they, after much consideration, assented.

This series of decisions, without one in conflict with them, presents conditions in which it is our undoubted duty to apply the principle which makes the judgments of coördinate courts obligatory where they have been upon the same points and the same subject matter. As we have already intimated, ordinarily we should terminate our consideration of the case here. A matter so often and so authoritatively decided would not be discussed upon principle did we not believe that a brief reference to the reasons upon which these adjudications rest would be locally beneficial.

Defendant's counsel, in the first place, insist that the subject-matter, as they construe the claim, is not patentable; that, in view of the state of the art—of what had been done before—the production of this plate did not involve invention, and that it had been in use by the dental profession. Our consideration of this head will be very brief—little more than a reference to a few of the reasons given in the adjudications which we have already cited. We know of no better statement of the claim than that given in the very able opinion of Judge Shepley, in the case of these complainants against Daniel H. Smith. [Case No. 5,598.] He says:

"It is for a set of artificial teeth, as a new article of manufacture, consisting of a plate of hard rubber, or vulcanite, with teeth, or teeth and gums, secured thereto in the manner described in the patent, by embedding the teeth and pins in the vulcanizable compound, so that it shall surround the teeth and pins while the compound is in a soft state before it is vulcanized, so that when the compound is vulcanized the teeth are firmly secured by the pins embedded in the vul-

canite, and there is a tight joint between the vulcanite and the teeth."

This definition includes alike the process of producing and the thing produced. Defendant's counsel earnestly contended that this case comes within the cases of Hotchkiss v. Greenwood, 11 How. [52 U. S.] 248, and Hicks v. Kelsey, 18 Wall. [85 U. S.] 670, which they insist hold that where one material is substituted for another in the production of a manufacture substantially like what already existed, a mere increase in efficiency would not sustain a patent. To apply that principle here would be an undue extension of the doctrine held by those cases. We approve, substantially, what was said by Judge Shepley of the case of Hotchkiss v. Greenwood [supra], that, "in effect, the court decided that the peculiar effect claimed was not new, and therefore not patentable, and not that the combination might not have been patentable, had any effect been shown which was new, peculiar, and useful. If the knobs of porcelain or clay used by the complainants in that case had been new, or if, being old, the complainants, by a novel use of them in the old combination, had accomplished a new and useful result, differing not merely in degree but in kind from the result of the old combination, the patent would clearly have been valid, and the case cited is certainly not an authority to the contrary." In Hicks v. Kelsey [supra] the court say: "The use of one material instead of another in constructing a known machine is, in most cases, so obviously a matter of mere mechanical judgment, and not of invention, that it cannot be called an invention, unless some new and useful result, an increase of efficiency, or a decided saving in the operation, is clearly attained." This recent case fully concedes what otherwise we should attempt to show from the adjudications. We think, as it clearly intimates, that cases may exist where the degree of superiority may be such as to amount, within the law of patents, to a difference in kind. It is a mere matter of phraseology, and describing it either way should work no difference in principle. Here the dental profession had for many years striven to produce joints between the artificial teeth and plate that should be permanently impervious to the fluids of the mouth. Treating this as the specific object of effort anterior to the patentee's production, it had never been done at all. His manufacture is wholly new, and, if necessary to the support of his highly meritorious claim, we would, in this regard, thus treat it. In view of this feature, and of the greatly added strength, its far greater adaptability to the surfaces of the mouth, in some uses its lightness, its elasticity, its resistance to chemical action, its vastly diminished cost, and several other important features detailed by the experts, the whole constitutes a product so substantially different from every-

thing that preceded it as to bring it within the true spirit of the law which protects property in useful inventions.

We cannot take time to review the testimony of the experts. What Judge Shepley said of the record before him is literally applicable to that before us. He says: "To overcome the presumption that it is a new manufacture arising from the grant of the letters patent, the respondent has not introduced the opinion of any expert who is willing, in view of the state of the art as known to him and proved in the case, to testify that this was not, at the date of the original application, a new manufacture. Reliance is placed upon the evidence introduced in the case by the respondent to convince the court of the fact, upon which respondent's experts were not convinced, that the manufacture patented, as distinguished from those which had preceded it, was not a new manufacture."

In connection with what we have already said as to differences created by increased efficiency in degree only, and that which, according to existing technical distinctions, is a difference in kind, we were much impressed with the answer of Edward S. Renwick, one of the leading experts for the defendant. A question called upon him to say distinctly whether the use of vulcanite in the mode described did not involve invention. He concedes, assuming Cummings did not invent vulcanite, that if the change of material introduced a property which was different in kind from those before known in dental plates, and was valuable, it would impart a useful property they did not before possess, and that would constitute a new manufacture. A consideration of his entire testimony, and that of the great body of experts in this case, will show, we think, manifestly, that they deemed that a difference in kind, which is as wide in fact and practical utility as that which characterizes this dental plate. Vulcanite was well known and its properties familiar. Gutta-percha was also well known, and had been actually manipulated in the dental art. The whole profession had been earnestly directing its attention specifically to the object so successfully accomplished by this invention, yet no one, until Cummings suggested it, approximated the results he obtained, nor was this great improvement rapidly adopted after its mention in journals peculiarly accessible to the profession. It made its way slowly, and only with the aid of much urgency and industry, and against persistent opposition, to nearly universal adoption. The proof develops no one instance of its use not traceable directly to knowledge derived from Cummings. However plausible may be the argument that because the properties of vulcanite were well known, and the mere forms of these plates and teeth familiar [there was no novelty in the invention], the history of this

invention demonstrates that, as a matter of fact, the highest skill of a learned profession, with all its elements for years before them, not only failed to discover it originally, but required years of argument and experiment before they would adopt it. As we should naturally expect in such conditions, there is an absence in the record of expert testimony, showing that this claim, as judicially construed, did not involve invention. No case ever before us more eminently called for the application of the rule so frequently relied on to uphold the novelty of inventions, which deduces the fact of novelty from the extent of the revolution immediately resulting in that department of the arts in which they are employed.

Formally, the objection was taken that the reissue was not warranted by the original patent. The present claim, as construed by the court, is so undeniably indicated in the original patent that, although we did not understand the counsel for the defense as by any means waiving the point, we did understand by what passed at the bar, and explanations that were made in answer to interrogatories from the bench, that little reliance was placed upon this position. No useful purpose would be subserved in noticing it further. We have no doubt whatever the reissue was warranted by the original patent.

It is also insisted that the complainants' manufacture was anticipated by several pre-existing dental plates. It is not deemed necessary to contrast any of these devices with that before us. It has been frequently done by other tribunals before which they have also been proved, and in every instance judicially pronounced to be wholly unlike that described in complainants' claim. There is not sufficient similarity to demand at our hands a comparison. We quote again from the opinion of Judge Shepley, already noticed, the conclusion at which he arrives after a careful and minute discussion of a part, and a general reference to the residue, of the exhibits here claimed as anticipating the patent. After discussing the cast-tin plates made by Hawes and Royce, he says: "Without going into a detailed examination of the Wildman plates, made by casting tin around the roots of the teeth upon gold or silver plates, the unsuccessful attempts to use gutta-percha, the experiments of Dr. Hill with a secret compound of gutta-percha and some metallic salt, it is sufficient to state that none of these, much less any of the printed publications of which notice is given in the answer, suggest or describe an article of manufacture substantially like that described and claimed in the reissued patent on which this suit in equity is based."

It was also urged on the argument here, as it has been in the other cases referred to, that the rights of the complainants had been forfeited under section 7 of the act of 1836 [5 Stat. 119], as amended by the act of 1839 [5 Stat. 353], which provides that if the claimant shall suffer his invention to go into public use with his consent and allowance for more than two years prior to his application for a patent, it shall be deemed abandoned; and that it was also forfeited under section 8 of the act of 1836, and the additional act of 1839, providing that if the invention shall be patented in a foreign country more than six months prior, and be introduced into public and common use in the United States before the application for a patent, it shall be deemed void. Defendant's counsel concede that if the application for this patent was made in 1855 instead of 1864, then these objections have no application, because no use whatever was proven in this country, nor was the patent issued in England before that date. If the application made in 1864 was but a continuation of the proceeding launched in 1855, so that we may consider the application then made as that upon which the patent rests, neither the two years' period under the one section nor the six months under the other would apply. That within the meaning of these provisions, where successive applications are made in the procuration of a patent, where there is no proof of actual abandonment, the subsequent application will be deemed a continuation of the first, is fully sustained by the following adjudications. Bell v. Daniels [Case No. 1,247], Leavitt, J., S. D. Ohio, 1858. The application filed January, 1838, was then rejected. There was no withdrawal. In March, 1840, a new application was filed, and a patent granted 1840. The court say: "This question is decided by section 7 of the act of 1836. That section provides that when a patent is refused the application shall still be in force, unless the applicant, in a manner pointed out, elects to withdraw it." Blandy v. Griffith [Id. 1,529], S. D. Ohio, Swayne, J., 1869. The application filed May 3, 1856; June 15, 1857, rejected on appeal; May 26, 1858, last application filed; patent granted August 3, 1858. Sales by inventor continuous from summer of 1855. The applicant never exercised his right of withdrawal. Justice Swayne says, "The application of May 26, 1858, was in itself too late; but we think it may be properly held to have been in the nature of a petition for the review of the previous rulings, and to have related back to the prior application, and that the final action of the commissioner was not original and independent action, but a renewal and elongation of the former proceedings, and a reversal of the previous rejections." In Godfrey v. Eames, 1 Wall. [68 U. S.] 317, application January, 1855; rejected May, 1855; withdrawal and new application, 1857; sales in fall of 1854; patent granted March 2, 1858. Justice Swayne, delivering the opinion of the court, said: "In our judgment, if a party choose to withdraw his application for a patent and pay the forfeit, intending at the time of such withdrawal to file a new petition, and he accordingly

do so, the two petitions are to be considered as parts of the same transaction, and both as constituting one continuous application within the meaning of the law." Pages 325, 326. All the following judgments sustain and apply the same principle. The last application is deemed an indivisible part of the proceeding commenced by the first. They all hold that the original application is that upon which the law considers the patent depends. Clark v. Scott [Case No. 2,833], Blatchford, J.; Singer v. Braunsdorf [Id. 12,897], Blatchford, J.; McMillin v. Barclay [Id. 8,902], McKennan, J.; Johnsen v. Fassman [Id. 7,365], Woods, J.; Jones v. Sewell [Id. 7,495], Clifford, J.; Adams v. Edwards [Id. 53], Woodbury, J.; Adams v. Jones [Id. 57], Grier and McCandless, JJ.; Sayles v. Chicago & N. W. R. Co. [Id. 12,414], Drummond, J. These decisions dispose of the objection that the rights of the patentee were forfeited because the application was not made in time. This disposition of the objection of forfeiture renders unnecessary what we should otherwise deem it proper to show, that in order to support that part of it resting upon the issuance of a foreign patent, proof should be given connecting the complainant with its procuration.

No objection was more strenuously urged than that predicated upon Godfrey v. Eames, 1 Wall. [68 U. S.] 317, which the defendant claims intimates that there may be an abandonment in fact, intermediate the first and succeeding applications, which will so sever the proceeding as to make the patent rest in legal contemplation upon the last, and, if two years before it the thing has gone into public use with the consent or allowance of the patentee, it shall be deemed abandoned. To answer this objection, and negative the idea that Cummings, by his delay in the prosecution of his claim, intended to abandon it, the complainants have put into the record voluminous proofs, showing a continuous and persistent assertion of his right and intention to maintain it. The testimony shows numerous and fruitless attempts to procure assistance to defray the expenses of his application by offering shares of the patent, if obtained, and otherwise, and in the later periods of his delay such a degree of ill health, poverty, and general depression on his part, as shows good reason why he did not prosecute more vigorously his application. The facts do not warrant, nor was the argument pressed, that there was fatal delay prior to 1859. At that time, Cummings had become insolvent, and his health seriously impaired by chronic diseases, which ultimately terminated his life. The testimony leaves no room for doubt that after this period he wholly ceased to furnish any considerable part of the support of his family. His wife's small separate property was first mortgaged and then sold, to procure what is proved to be the small and sometimes too scanty expenditure upon which they lived. The praiseworthy efforts of his wife as the keeper of a boarding-house, the pawning of her few personal ornaments, and her general care and support of a diseased and dispirited husband, present a picture as affecting as it is demonstrative of Cummings' inability, from sheer poverty, to prosecute his application. The only diligence of which, in his physical and pecuniary condition, he was capable, he manifested by such a constant reiteration of his rights as showed that the idea, in the words of some of the witnesses, "had taken complete possession of his mind," and incapacitated him for all other business. His offer of portions of the future patent were frequently repeated during the whole period till 1864, when, after its partial use by the profession had demonstrated its utility, for the first time his proposition was accepted, the means obtained, and the patent procured. His history and condition during this entire time exclude the idea that he intended to abandon his claim. The prima facie evidence of a contrary intention springing from the fact that he did make the last application is not overcome by the evidence aliunde, but is proven to be consonant with the real intention of the inventor.

There is one most remarkable feature in several of the discussions of this subject before other tribunals, and which with great emphasis presented itself in this. We do not refer to it to censure counsel in the present cause, as those of equal eminence have elsewhere, in the presence of excited defendants, made similar denunciations. That Goodyear should have a patent for vulcanite, and compel dentists to pay a royalty for using it, and that Cummings should procure a patent for a dental plate made of that same substance, and compel them also to pay a tribute for its use, is treated as an astounding novelty and an atrocious fraud. The accident that subsequent transfers have lodged the present patent in the same hands which held that of Goodyear, presents to the unprofessional mind, unacquainted with the wholly distinct character of the two rights, plausible grounds for this unfounded criticism. A large share of the strong feeling and the strong conviction that injustice has been done the dental profession has sprung from what seems to us a wholly unjustifiable perversion of the most familiar truisms in patent law. It is but the simple—the every day recurring—case where one patentee employs the invention of a prior one. In such instances, it must be true that he who uses the manufacture or article which involves both, must pay a royalty to each inventor. Cummings' invention neither authorized him nor any one else to use the invention of Goodyear, nor could the latter make these dental plates with his material without the consent of Cummings or his grantees. When Goodyear's patent expired he and his associates had just as much right to become the assignees of Cummings as any other citizen. The accidental circumstance that the same

man issued licenses first under one patent and then under the other is unimportant and even trivial. Such instances in this department of business are very frequent, and the union of such interests, instead of being injurious, is beneficial to the public, not only from the economy but the convenience of procuring licenses. Self-evident as all this is to the legal profession and to those dealing in this species of property, an impolitic and much-to-be-regretted impression has been created in the minds of the dental profession, that they have been wronged and actually oppressed by what has been termed "the mercenary marriage or illicit connection of these two rights." It would seem too evident to require additional illustration that the rights under this patent, and the obligations of those who use it, are in no way changed in the slightest degree by the immaterial fact that Goodyear once had a patent for vulcanite that has now expired. Its use is free alike to the dentists and these complainants. The one charges and the other pays neither more nor less than if vulcanite was a natural substance common as ordinary clay. It is the real valve of Cummings' invention alone which is sold, and which they purchase or not, as they please, being free to use vulcanite without any royalty whatever, for any purpose not involving his invention.

Our purpose in thus referring to a few of the reasons which induce us to decide this case in favor of the complainants upon principle, irrespective of the prior adjudications, has been to suggest to the numerous other defendants having like cases pending what we believe to be the uselessness of additional argument before subordinate tribunals. If this patent is to be held invalid after so many judgments sustaining its validity, we are clearly of the opinion that it should be done by the court of last resort. The interests of the numerous defendants now litigating in the circuits would be far better promoted by an early appeal to the supreme court than in wasting so much time and money by the creation of numerous similar records, and paying for repeated arguments before coördinate courts. We do not think they can be effective there without a violation of the well-established and necessary principle to which we referred in the outset, which renders authoritative upon us the long list of adjudications elsewhere rendered.

Decree for complainants.

See 102 U. S. 222, and Smith v. Goodyear Dental Vulcanite Co., 93 U. S. 486, wherein the principles of this opinion were affirmed.

[For other cases involving this patent, see note to Dental Vulcanite Co. v. Wetherbee, Case No. 3,810.]