### ALLINGTON & CURTIS MFG. CO. et al. v. GLOBE CO.

### SAME v. LEE.

(Circuit Court, S. D. Ohio, W. D. November 9, 1898.)

**1. PATENTS—VALIDITY—PRIOR DECISIONS OF OTHER COURTS.**
A decision of one circuit court as to the validity of a patent upon substantially the same evidence will be followed in another circuit court.

**2. SAME—PATENTABILITY—SUCCESS OF DEVISE.**
While the success of a patented device is not conclusive as to its patentability or novelty, it is quite persuasive where the question is a doubtful one.

**3. SAME—PRIOR PATENT FOR IMPROVEMENTS.**
The granting of a patent for improvements on a machine pending a prior application for a patent on the machine itself does not invalidate the latter when issued, the earlier patents reciting the pendency of the application for the principal invention.

**4. SAME—DUST COLLECTORS.**
The Morse patents, Nos. 403,362, 403,363, and 403,770, and the Holt patent, No. 409,465, all covering improvements on dust collectors, are valid.

These were suits in equity by the Allington & Curtis Manufacturing Company and the Knickerbocker Company against the Globe Company and Thomas Lee, respectively, for the infringement of certain patents.

Offield, Towle & Linthicum and Albert H. Walker, for complainants.

Parkinson & Parkinson, for defendants.

TAFT, Circuit Judge. These are bills to restrain the alleged infringement of four patents, No. 403,362, No. 403,363, No. 403,770, issued to Orville H. Morse, and No. 409,465, issued to Noah W. Holt, all for an improvement in dust collectors. Claim 2 of letters patent No. 403,363 is as follows:

"A dust collector, consisting of a tapering separating chamber, having an imperforate peripheral wall, in which the whirling body of air forms a vortex, and in which the air moves from the periphery towards the axis of the vortex as it becomes freed from the solid matter; said chamber having at its large end a tangential inlet for the dust-laden air, and a discharge aperture for the purified air opening into the atmosphere, and provided with a tubular guard projecting into the separating chamber, and at its small end a discharge opening for the separated dust, substantially as set forth."

The validity of this claim has been considered by Judge Grosscup of the Northern district of Illinois in the contested case of Knickerbocker Co. v. Rogers, reported in 61 Fed. 297. That learned judge describes the operation of the collector as follows:

"The current of dust-laden air, being blown through the tangential opening into the collector, is projected round the interior of the large end of the

cylinder and cone. By reason of the fact that its specific gravity is greater than that of the air, all particles of dust are thrown, by centrifugal force, to the interior walls of the cone, and, circulating spirally down these walls, emerge from the small opening at the lower end of the cone. The air from which the dust has been more or less precipitated is itself subjected to the spiral motion and centrifugal force, and also to a degree of condensation greater than the outside air, by reason of the inpouring currents through the tangential opening, and therefore, upon reaching the lower edge of the tubular guard, pours upward round the exterior walls of the guard, to the air without. The effect of the centrifugal force, however, is such that, at the immediate axis of the whirling air, there is a rarification that causes the outward air to pour in, both through the guard and through the lower opening. What office this plays in the ultimate operation of the collector, I am not able satisfactorily to determine. The net result of the operation is, however, clearly shown to be that a large percentage of the dust flows through the lower opening, while the air rising through the tubular guard is almost entirely freed of dust. The evidence established, beyond any substantial doubt, that the machine is highly successful, and that no other device of its form or substantial mode of operation was ever before employed in the art to which it has been put."

It is well settled that a decision of one circuit court, after a full hearing, in a patent case, upon substantially the same evidence, will be followed in another circuit court, and that, if a different conclusion is to be secured, the case must be carried to an appellate court. National Cash-Register Co. v. American Cash-Register Co., 3 C. C. A. 559, 53 Fed. 367, 370; Spindle Co. v. Taylor, 69 Fed. 839; Office Specialty Mfg. Co. v. Winternight & C. Mfg. Co., 67 Fed. 929; Paper Bag Co. v. Nixon, 35 Fed. 753; Reed v. Railroad Co., 21 Fed. 283; Searls v. Worden, 11 Fed. 502; Vulcanite Co. v. Willis, 10 Fed. Cas. 754.

Notwithstanding this rule, the case has been fully presented on both sides anew, and many points which were presented to Judge Grosscup have here been elaborated in the evidence, and there has been some additional evidence as to prior uses. I have read the somewhat voluminous record with care. I do not find that any of the prior uses are satisfactorily established, so as to defeat the patent. In the case of the prior uses known as the "Post & Co. use" and the "Dueber Factory use,"—one at Cincinnati, and the other in Newport, Ky.,—the proof rests chiefly on the evidence of Thomas Lee, one of the defendants. He testifies that he built a dust collector for Post & Co. in 1880, which was partly cylindrical and partly conical or tapering; that it had a tangential inlet for the dust-laden air, an aperture at the top for the escape of the purified air, and a small aperture at the bottom for the separation of the shavings and dust by the vortical action of the machine. He is supported by several witnesses, and, on the other hand, he is contradicted by a number as to the presence of the machine in the buffing room of Post & Co. None of the witnesses except Lee are able to testify with any degree of accuracy as to what the machine was. Witnesses called by the plaintiff denied the presence of any machine of such size as that described by Lee, and also denied that there was a hole at the bottom of it, through which the dust was precipitated into a bag or box. On the whole, the proof is not at all sufficient to defeat the patent. The prior use sought to be proved

at the Dueber Watch Company is even less satisfactory. This use Lee did not think of to insert in his first answer, and it was only brought in by an amendment. The machine, whatever it was, was discarded at a very early period by the Dueber Watch Company. The proof as to its operation is not at all satisfactory. Here, too, the proof as to its form depends largely on the testimony of Lee, the defendant. Both these prior uses were brought before Judge Grosscup on affidavit, and were considered by Judge Townsand, of Connecticut, where a preliminary injunction was obtained. The Barbour prior use depends on drawings and models said to have been made by one Barbour, before March, 1886, the date of the Morse patent, for a spark arrester to be put in an engine stack. The Barbour use must fail, because the conception was not reduced to practice with sufficient speed. It seems to have been an abandoned experiment until after Barbour saw the success of the Morse patent. It is not necessary for me to consider the other prior uses, because they are less formidable than those already discussed.

The grave doubt in my mind arises upon a matter which was considered by Judge Grosscup, and that is whether the patent of Morse really involves patentable novelty, in view of the prior art. The Stratton steam separator, patented before Morse's collector, was for the purpose of taking entrained water out of steam, and involves, it seems to me, exactly the same principle and a very similar application of the principle which is in the Morse dust collector. The only difference is that the lower part of the steam separator is not in the form of an inverted cone, like that of the Morse patent. The entrained water, after separation from the steam, which is drawn upward through the tubular guard, is accumulated in a cylindrical vessel, terminating in a pipe or plug at the center of the base. The extreme base has a slightly conical shape, but the separator could hardly be described as tapering. Considering the fact, however, that the inverted cone was a form frequently used in prior dust collectors, it is a matter for serious consideration whether it required any particular patentable invention to make the Stratton steam separator into a dust collector. It was well known that the whirling motion of dust-laden air would separate the dust from the air, and throw the dust against the exterior wall of the vessel in which it was contained; and therefore the analogy between the separation of water from steam and of dust from air would seem to have been clearly established in the prior art. It is a matter, then, for consideration whether the transfer from the prior dust-collecting art of the inverted cone to form the base of the Stratton steam separator involved invention. Were the question res integra in this court, I should feel grave doubt in respect to it. In the hearing before Judge Grosscup it was contended that the Stratton separator would separate dust from air, and some experiments were attempted before him which, from his opinion, I should judge, had not proved to be successful.

The evidence upon this point has been much more elaborate in the case at bar than it was in the Rogers Case. It can hardly be said to be more than cumulative,—and yet, but for Judge Grosscup's

opinion, I should be inclined to hold that it was fairly demonstrated that a machine constructed in the form and dimensions of the Stratton machine will separate dust from air in a satisfactory way.  If this be true, it removes from the case the theory upheld by the complainants of some mysterious force due to the tapering form of the base, which scientific theories will not explain, but which results in a remarkable clarification of air from dust.  I do not think, however, that the evidence is so different from that before Judge Grosscup as to justify me in departing from the rule so clearly established by the authorities above cited.  Another weighty circumstance in favor of following his decree is the success of the Morse patents.  They have in a large measure supplanted, in wood-working shops and in flour mills, every other form of dust collectors; and, while this circumstance is not conclusive as to the patentability of the device and the novelty involved in its manufacture, it is quite persuasive where the question of invention is a doubtful one.

Some question has been made as to the meaning of "tapering" in the claim read from the Morse patent.  In the three Morse patents the form of the separator was an inverted cone.  In the Holt patent, which is an improvement on Morse, the upper part of the separator has a cylindrical form, and the tapering begins, not at the top, but lower down.  In the case before Judge Grosscup, the infringement had a partly cylindrical and partly conical form, as is shown by the opinion.  The use of the cylindrical form for the upper part does not seem to me to change at all the question of the patentability of the invention or the infringement of the patent. I find that all the claims alleged to be infringed are valid both in the Morse and in the Holt patent.  The claim already set out involves the principal features of the machine, and its discussion sufficiently covers the case.

It is objected that the Morse patents are invalid, under the case of Miller v. Manufacturing Co., 151 U. S. 186, 14 Sup. Ct. 310, on the ground that Morse took out two earlier patents which disclosed the same invention.  The facts are that the patents here in suit were for Morse's principal and primary invention.  His application for this invention encountered opposition in the patent office, and interference proceedings delayed the granting of his patents.  The earlier patents were for improvements upon this primary invention, and involve the same combination with an additional element which made the improvement.  The fact that a claim for the original and primary invention was then pending in the patent office on a separate application was recited in the specifications of the first patent, and the public were distinctly advised that the earlier patents were only patents for improvements.  The case is entirely distinguishable from Miller v. Manufacturing Co., on the ground set forth in the case of Thomson-Houston Electric Co. v. Ohio Brass Co., 54 U. S. App. 1, 30, 31, 26 C. C. A. 107, and 80 Fed. 712.

This case has never been heard in a court of appeals on its merits.  I think it ought to go there; but, for the reasons given, I must enter a decree for a perpetual injunction, and allow a reference to a master to take proof on the question of damages.