## LAU OW BEW *v.* UNITED STATES.[1]

*(Circuit Court of Appeals, Ninth Circuit. October 7, 1891.)*

CIRCUIT COURT OF APPEALS—CERTIFYING CASE TO SUPREME COURT—CONTROLLING DECISION—CHINESE.

The decision of the United States supreme court in *Wan Shing* v. *U. S.*, 140 U. S. 424, 11 Sup. Ct. Rep. 729, that no Chinese merchant formerly residing in the United States, but temporarily absent therefrom, is entitled to return without presenting the certificate prescribed by section 6 of the exclusion act, (22 St. c. 126,) is conclusive upon the circuit court of appeals, and that court will not certify a like case to the supreme court for instructions.

Appeal from circuit court. **47 Fed. Rep. 578.**

Petition by Lau Ow Bew for *habeas corpus.* The petitioner is a Chinese merchant, who came to the United States under the treaty entered into between the United States and China on the 28th day of July, 1868, which treaty is commonly known as the "Burlingame Treaty," and he established his domicile therein, and continued to reside in the United States until the 30th day of September, A. D. 1890, when he departed for China on a temporary visit to his relatives, with the intention of returning to this country as soon as possible, and did in fact return hereto on the 11th day of August, A. D. 1891. For 17 years prior to his departure to China he had been a resident of the city of Portland, in the state of Oregon, and had carried on a wholesale and importing mercantile business therein, under the firm and style of Hop Chung & Co. This firm is worth the sum of $40,000 over and above its debts and liabilities, and the petitioner has a one-fourth interest therein, in addition to other properties. The firm does a business annually of $100,000, and pays annually to the United States government large sums of money, amounting to many thousands of dollars, as duties on imports. At the time of petitioner's departure for China he procured satisfactory evidence of his *status* in this country as a merchant, and on his return hereto he presented said evidence to the collector of the port of San Francisco, but said collector, while acknowledging the sufficiency of said proofs, and admitting that the petitioner was a merchant domiciled in this country, refused to permit him to land, on the sole ground that he failed and neglected to present to the collector the certificate of the Chinese government, mentioned in section 6 of the act entitled "An act to execute certain treaty stipulations relating to Chinese," approved May 6, 1882, as

[1] For *certiorari* from supreme court, see 12 Sup. Ct. Rep. 43.

amended by the act of July 5, 1884. The sixth section of the act of May 6, 1882, (22 St. p. 58, c. 126,) provides that, for the faithful execution of the treaty of November 17, 1880, every Chinese person, other than a laborer, who may be entitled by it and by that act to come within the United States, and who is about to come, "shall be identified as so entitled by the Chinese government in each case, such identity to be evidenced by a certificate issued under the authority of said government, which certificate shall be in the English language, or (if not in the English language) accompanied by a translation into English, stating such right to come, and which certificate shall state the name, title, or official rank, if any, the age, height, and all physical peculiarities, former and present occupation or profession, and place of residence in China, of the person to whom the certificate is issued, and that such person is entitled, conformably to the treaty in this act mentioned, to come within the United States. Such certificate shall be *prima facie* evidence of the fact set forth therein, and shall be produced to the collector of customs, or his deputy, of the port in the district in the United States at which the person named therein shall arrive." The reason ascribed by the petitioner for his failure to procure the said certificate was that the Chinese government could not issue the certificate, because it could not ascertain, as required by law, the nature and character of the business carried on by the petitioner, where, and how long carried on, and the estimated value thereof; nor could the United States consul, resident at the port of departure, *visé* said certificate as required by law, because he could not ascertain the truth of the facts which should be set forth therein. After the refusal of the collector, as hereinbefore set forth, to permit the petitioner to land in the United States, the latter sued out a writ of *habeas corpus* before the circuit court of the United States in and for the ninth circuit, northern district of California, and, upon a hearing, he was, by the judgment of that court, remanded 'to the custody of the master of the steam-ship from which he was taken. From this judgment he has appealed to this court.

*Thomas D. Riordan,* for appellant.

The sole question involved in this case is whether section 6 of the restriction act of May 6, 1882, as amended by the act of July 5, 1884, is applicable to Chinese merchants who are domiciled in this country, and who have large business interests therein, and who depart therefrom for other countries, on a temporary visit, either of business or pleasure, with the intention of returning. From the passage of the amended restriction act of July 5, 1884, up to May 11, 1891, it has been invariably conceded, both by the courts and the officials of the treasury department, that section 6 of the act above referred to was not applicable to the cases of merchants hereinbefore mentioned. The question first came before the circuit court in and for the northern district of California on the 9th of April, 1885, in the case of *In re Ah Ping,* reported in 11 Sawy. 17, 23 Fed. Rep. 329. In that case the court said: "If we have interpreted the principles established by the supreme court aright, the result is that section 6 of the restriction act is not applicable to Chinese subjects, residents of the United States, who left the United States for foreign countries for temporary purposes, intending to return before the passage of the amendatory restriction act, having a right to return at the time of their

departure, and who did not return till after the passage of the act; nor to Chinese subjects, residents of the United States, departing for temporary purposes of business or pleasure since the passage of the act. This is the construction acted upon by the executive department of the government, and we think is fully justified in these particulars by the decision of the supreme court." Prior to the rendition of this decision, the department of the treasury decided the identical question involved therein on six different occasions. The first decision was rendered by the Hon. Charles J. Folger, the then secretary of the treasury, on March 14, 1884; the second, by the Hon. W. Q. Gresham, now United States circuit judge, on September 25, 1884; the third, by the Hon. H. F. French, the assistant secretary of the treasury, on December 2, 1884; the fourth, fifth, and sixth, by the Hon. H. McCulloch, secretary of the treasury, on December 6, 1884, December 27, 1884, and January 14, 1885, respectively. The same question was again decided in conformity with the views expressed by the circuit court in the *Ah Ping Case* by the Hon. J. H. Maynard, assistant secretary of the treasury, on November 8, 1888, and by Acting Secretary of the Treasury Bachelor, on July 3, 1890. In all of these decisions, the various officials of the treasury department have uniformly held that section 6 of the act was not applicable to Chinese merchants who are domiciled in this country, and who departed therefrom temporarily, and that they might return upon the production of such evidence as might be satisfactory to the various collectors of their *status* as resident merchants in this country. On May 11, 1891, the supreme court handed down a decision in the case of *Wan Shing* v. *U. S.*, 140 U. S. 424, 11 Sup. Ct. Rep. 729, in which the court virtually reverses the various decisions hereinbefore referred to. That case was not argued in the supreme court, nor was there any brief filed on behalf of the petitioner, nor was there any presentation of the case in any way on behalf of either side. If the case had been properly presented to the supreme court, we think a different conclusion might have been reached. The point involved in this case, and decided in the *Case of Ah Ping*, and in the various decisions of the treasury department above referred to, was not involved in the supreme court case. The record in that case shows that the petitioner, Wan Shing, arrived in the United States in 1880, and departed therefrom in 1882, and did not return to this country until August 7, 1889. The testimony further shows that said petitioner was not a merchant, and did not have any interest in any mercantile firm in this country, and that the only ground upon which he claimed the right to land was that his father had an interest in a mercantile firm in the city of San Francisco. The Chinese have never contended, nor has any one on their behalf ever claimed, that the son took the *status* of the father. On the contrary, the father might be a merchant, and the son a laborer, and therefore, under the Scott exclusion act, prohibited from landing in this country. Furthermore, no one has ever contended that an absence from this country of seven years, after a residence therein of two years, constituted a temporary absence. The result of the decision of the supreme court, if enforced, will be that Chinese merchants who have been domiciled in this country for many years, and who have departed therefrom temporarily, for the purpose of attending to their branch business in Victoria, Honolulu, Mexico, or other countries, must, before they can return to this country, proceed to China, and there attempt to procure a certificate which it is an impossibility for the Chinese government to grant. An analogous proposition to the one involved herein was decided by Mr. Justice FIELD in the *Case of Low Yam Chow*, decided in the circuit court, district of California, on September 5, 1882, and reported in 13 Fed. Rep. 605. That was a case of a merchant who had been domiciled in Peru for a period of over 10 years, and who, at the breaking out of the war between Chili and Peru, left the latter country for Panama, and subsequently

left Panama for the United States. Upon his arrival in this country he was refused permission to land, on the ground that he failed to produce the certificate required by section 6 of the original act of May 6, 1882. He ascribed as a reason for his failure to produce said certificate the fact that the Chinese government could not issue said certificate, because, by reason of his long-continued absence from China, and his residence in Peru, the Chinese government could not certify to the facts required to be set forth in said certificate, and the court in its decision upheld the petitioner in his contention. In rendering the decision, Mr. Justice FIELD says, (referring to the Chinese government:) "That government could not be expected to give in its certificate the particulars mentioned of persons resident, some perhaps for many years, out of its jurisdiction; neither the letter nor the spirit of the act calls for a construction imputing to congress the exactment of a condition so unreasonable." And so we say, in this case, the Chinese government could not be expected to certify that this petitioner had been engaged in the mercantile business in the city of Portland, state of Oregon, for a period of seventeen years, and that the capital stock of his business was $40,000, and that he carried on a business annually of $100,000, nor could the diplomatic representative of the United States ascertain the truth of these facts before viséing the certificate, as required by section 6 of the restriction act. This court will not place upon the restriction act a construction which would virtually abrogate or nullify the provisions of the treaty of November, 1880, unless the intention on the part of congress to so nullify or abrogate such treaty appears in clear and explicit terms. *Chew Heong* v. *U. S.*, 112 U. S. 536, 5 Sup. Ct. Rep. 255; and *Chae Chan Ping* v. *U. S.*, 130 U. S. 581, 9 Sup. Ct. Rep. 623. To hold that merchants domiciled herein, and who depart herefrom temporarily, must produce a certificate which it is impossible for them to obtain, is virtually to abrogate the treaty as to such merchants, and to say to them that, notwithstanding the fact that they have vested rights which both governments sought to protect by the treaty of 1880, and which this government further sought to protect by the restriction acts of May, 1882, and July, 1884, they cannot return to this country to guard and protect the capital which they have invested herein. We do not believe that congress ever intended that such a construction should be placed upon the act in question. We therefore respectfully submit that the judgment of the circuit court should be reversed.

*W. G. Witter*, for respondent.

Before Ross and HAWLEY, JJ.

PER CURIAM. It is conceded by counsel for the appellant that in the case of *Wan Shing* v. *U. S.*, 140 U. S. 424, 11 Sup. Ct. Rep. 729, the supreme court decided the point involved in the present appeal adversely to the appellant. Nevertheless we are asked, by virtue of the sixth section of the act creating this court, to certify the case to the supreme court for instructions, upon the ground, as is claimed, that that court might have decided the case of *Wan Shing* v. *U. S.* the same way for other reasons than those assigned as the basis of the decision, and because in that case the attention of the court was not called to certain provisions of the act of congress, the consideration of which, it is claimed, would have wrought a different result. There is nothing in the opinion of the court to indicate that its attention was not called to the clauses of the act referred to. The precise point was decided, and we are bound to presume that every provision of the law bearing upon the subject was

considered by the court. We cannot put **ourselves in** the attitude of asking instructions upon a point already decided. If, as is contended on the part of the appellant, the case of *Wan Shing* v. *U. S.* was not fully presented to the court; and if, as is said, the treasury department of the government, in enforcing the provisions of the act of congress involved in *Wan Shing's Case*, is giving it a different construction from that given by the court whose province it is to construe and declare its meaning, under the belief that the court did not really intend to decide what it did decide; or if, for any cause, the supreme court may wish to reconsider the question,—an application to that tribunal to cause the record in the present case to be certified up to it may afford the appellant the remedy he seeks. For this court there is nothing to do but to affirm the judgment on the authority of the case cited, and it is ordered accordingly.