672                     172 FEDERAL REPORTER.

WATERBURY BUCKLE CO. v. ASTON.

(Circuit Court, E. D. New York. August 2, 1909.)

PATENTS (§ 328*)—INFRINGEMENT—SUSPENDER BUCKLE.
    The Peller patent, No. 847,811, for a suspender buckle, was not antici-
pated, and discloses patentable invention; also *held* infringed.
    [Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

In Equity. On final hearing.

Robert B. Killgore (George D. Seymour, of counsel), for com-
plainant.

David J. Wagner (George A. Clement, of counsel), for defendant.

CHATFIELD, District Judge. On the 8th day of January, 1902,
one Morris Peller, a resident of the borough of Manhattan, city of New
York, filed an application in the United States Patent Office, upon
which he ultimately received a patent, No. 847,811, on the 19th day of
March, 1907. The entire interval between the filing of the application
and the issuance of the patent was taken up by interference proceedings
in the Patent Office, appeals to the Commissioner, to the Circuit Court
of Appeals for the District of Columbia, and numerous rejections,
amendments, and substitution of claims. Some of the matters occur-
ring in this interference proceeding will have to be considered when we
reach the point of determining whether novelty was shown by the
Peller application, and compare his specifications and drawings with
the patents and applications considered during these interference pro-
ceedings.

It appears from the testimony that the Waterbury Buckle Company,
the complainant, who acquired the rights under Peller's application by
an assignment upon the 7th day of July, 1902, have been manufactur-
ing suspender buckles for a considerable period, and one of the exhib-
its in evidence is a card of sample clasps or front plates for suspender
buckles, issued to the trade in 1901, showing designs of buckles and
representing the practical form of the art at that time. Some of the
buckles upon the sample card must be considered later in connection
with the subject of anticipation as well.

At the time Peller filed his application buckles for use upon sus-
penders were generally of two kinds: (1) Those in which the webbing
passed through a space between the upper part of the wire or metal
frame and the lower portion or plate to which the attaching end of the
suspender was fastened, with a toothed clamp so hung upon the upper
part of the frame as to cause the teeth to press the webbing of the sus-
pender against the back portion of the frame when the clamp was
closed; and (2) the various forms of suspenders embodying a double
webbing in which the portions of the buckle coming next to the body
were sewed into the end of the webbing, the holding being occasioned
by a clamp or toothed plate, performing similar functions to those in
the first style described. Peller's idea was to remove the metal plate
or frame which had to be worn next to the body in the first style of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

buckle, and to obtain the advantage of a single thickness of webbing at the point of clamping, by applying the toothed clamp at such a point with reference to the lower edge of the space through which the webbing passed, as to deflect the webbing from a straight line and cause the teeth of the clamp to press the webbing down upon this lower part of the frame, which, in turn, would be covered by the webbing of the returned end, thus shielding the entire back face of the buckle, so that no metal is exposed on the back of the buckle, and undue thickness and bunching is avoided. The testimony shows that while the Peller form of buckle required a slight amount of extra webbing, in that it is necessary for the webbing to pass down through the attaching portion of the suspender and back to the buckle, and thus in the aggregate was slightly more expensive to the manufacturers than a single-web suspender, nevertheless the demand, as soon as what may be called the Peller form of buckle was placed upon the market, became so great that 85 per cent. of all suspender buckles at the time of taking testimony were said to be of this general style.

In filing his original application Peller submitted drawings showing three separate metal parts to his buckle, one of which consisted of the wire frame; second, the clasp or toothed plate turning upon the pintle ends of the wire frame; and, third, a metal strap fastened across the lower part of the wire frame so as to form the edge across which the webbing would be deflected and held under pressure by the movement of the teeth of the clasp. In his original specifications Peller described this strap in the drawings above referred to, but in stating his claims did not differentiate from the ordinary old-style buckle of two pieces, merely saying that his buckle consists of "a body section having an open portion near its top and a locking-cap hinged to the top of the body." This general form of description is present in each claim as originally asked for, and seems to be deficient and to fail to describe Peller's idea, in that it is not made plain that he intended to limit his buckle to one having the open space at such a position with reference to the webbing and to the clamp or teeth, that the webbing would be caused to press down upon the upper edge of the back plate of the buckle, rather than against this back plate itself. The difference between these two constructions is the difference between the so-called "rustless buckle" and the old-fashioned styles.

At various times in the Patent Office, nevertheless, amendments and changes were suggested and proceedings had with reference to applications filed by Stephen Percy Gibbons, Moses L. Rothschild, and Edward Cleary, Roswell A. Moore, Jr., Walter J. Siebert, George A. Weld, Dwight L. Smith, Ernest N. Humphreys, and Morris Peller. Peller was the senior applicant, and the result of the interference proceedings may be, so far as the other parties are concerned, disposed of by a reference to the final action of the Patent Office by which the patent was issued to Peller.

But during this interference proceeding the defendant Walter F. Aston on or about the 8th day of May, 1905, petitioned for the allowance of a patent upon the exact form of buckle now manufactured by the defendant, and substantially the exact buckle which the complainant has put upon the market under the Peller patent. It was called

172 F.—43

to the attention of Aston that the defense of over two years prior public use was urged against his application, and after some time he was substantially held in default, the interference proceeding went ahead, and nothing further was done upon his petition.

One of the parties to the interference proceeding, Dwight L. Smith, was represented by Messrs. Seymour & Earle, who represented Peller by substitution during the latter part of the proceeding, of which firm the counsel for the complainant in the present action is the senior member. Smith filed his application upon the 14th day of February, 1902, for what he called an improvement in "rustless buckles," stating that he did not claim to be the inventor of a rustless buckle, "in which the lever is constructed and arranged with reference to the buckle-frame so that the clamping edge of the lever will force the upper reach of the webbing over or substantially over the upper edge or top of the lower side of the frame, that being broadly the invention of Morris Peller and shown and described in his pending application, filed January 8, 1902, serially numbered 88,854." Smith's specifications and drawings did away entirely with the so-called strap of the Peller application, but carried the wire, forming the lower part of the frame of the Peller buckle, across in the position of the upper edge of the strap shown by Peller, with a loop or bend in the same plane with the rest of the frame, at the center of the webbing, and capable of insertion through the short end of the webbing in such a way as to both render unnecessary any stitching, and to furnish leverage to the various lengths of webbing and to the clamp itself when the strain was placed upon the various parts by the weight of the garment. The drawings inserted below will sufficiently show the points referred to.

| M. PELLER. | D. L. SMITH. | G. LA CHAPELLE. |
| SUSPENDER BUCKLE. | BUCKLE. | BUCKLE. |

As a result of the substitution of Seymour & Earle as attorneys for Peller, and as a result of Smith's claim to an improvement upon the Peller buckle, the ultimate decisions in the interference proceeding seem to have been based upon the theory that Peller had in mind, and actually intended to describe, a buckle like that of the Smith application, with substantially but two members or parts, one of which was a clamp, and the other was the wire frame, the lower bar of this frame furnishing the clamping surface, but in the precise form in which

Peller first filed this application, he made this bar with the additional piece of metal or strap attached to the sides of the frame itself.

The defendant contends that it was merely mechanical ' provement and not invention to remove the upper portion of the plate of the old two-piece buckle, and to furnish a clamping surface upon the upper edge of the plate so cut down. The complainant would seem to contend that it was merely mechanical improvement and not invention for Smith, or any of the other parties to the interference to see that Peller in his specifications and claims was describing in substance a suspender buckle of the form now manufactured by the various parties shown in the testimony. It is evident that Smith, who is shown by the testimony to have been the foreman of the factory for the Waterbury Buckle Company, which had been manufacturing buckles for Peller, and which purchased from him his invention, as has been stated, recognized the principle involved in the particular form of "rustless buckle" now on the market, and assumed that Peller's application disclosed this principle, even though Peller himself, and the solicitors who made the application for him did not at the outset claim the general form of the idea and device, and Peller even may not have been sufficiently familiar with such matters to realize the similarity between the general invention involved, and the particular form of the invention worked out in his specifications by means of a strap.

A number of patents which have been recited in the answer and testimony by the defendant as anticipatory, such as, Jones, No. 499,836, June 20, 1893, Abrams, No. 673,611, May 7, 1901, La Chappelle, No. 485,101, October 25, 1892, and others, would properly prevent Peller from obtaining a patent upon the claims which he originally submitted to the Patent Office. It is evident that Peller's claims as amended and modified within the rulings of the Patent Office would have anticipated the Smith application and those of every other petition brought into the interference, and the result of the interference proceeding, therefore, was correct in allowing Peller to so amend and substitute claims, and to finally obtain the issuance of his patent in broad enough language to cover the general principle shown in the present form of rustless buckle, unless it appeared from the record that Peller did not knowingly conceive an idea which necessarily involved the general proposition, and unless his original invention be limited to the particular form of the buckle with a strap, and it be held that he had no appreciation of the principle therein involved. In the latter case Smith or some of the later applicants were the real inventors and entitled to the patent, at least so far as its broad claims are concerned, unless the idea be held merely mechanical improvement and not the exercise of inventive genius. But it must be held as between the Peller application and use of the principles involved, and the Smith or other interfering petitions, that everything patentable in the idea was disclosed by the Peller buckle. The principle involved was that shown by the deflection of the webbing in such a way as to insure holding between the teeth of the clasp and the upper edge of the lower frame, together with opportunity to have the webbing pass through the buckle and to return in such a position as to cover the buckle and keep it out of contact with the wearer. It would seem, therefore, that the result of the proceeding

in the Patent Office was correct inasmuch as Peller's invention was the first one which showed this combination of construction and ideas, and every element necessary in the combination was disclosed by his application. And in the opinion of the court such an improvement involved invention and an advance upon anything shown by earlier patents or the prior art..

The defendant has called attention to a number of patents, of which the Harris patent, No. 368,529, August 16, 1887, Finney, No. 408,834, August 13, 1889, La Chappelle, No. 485,104, October 25, 1892, Abrams, No. 673,611, May 7, 1901, and Smith, No. 762,662, June 14, 1904, alone need be considered, and of which the defendant's expert picks La Chappelle's patent as being the closest in its teaching and discovery to the present form of rustless buckle. But none of these patents show all the features for which invention is claimed, and upon which the Peller patent was granted. The La Chappelle patent is not of the type which is now called "rustless," although but little metal is exposed at the back of the buckle. The clamping is done by means of pressure exerted between two plates, rather than by adjusting the webbing in such a position as to cause it to engage itself with the teeth of the clamp. The other buckles are either of the old form, in which pressure is against the face of a metallic plate, or large single-web buckles of another type entirely, and there is no evidence in the case showing the use of anything in the trade which would anticipate or disclose, so as to be the property of the public, the invention upon which Peller made his application, except in so far as to have conceived the idea would have been invention on the part of any one, if such an improvement had been devised at any time before Peller noticed the change which he later embodied in his application.

So far as Aston's own manufactures are concerned, and his attempt to enter the interference proceeding, it need only be said that whatever device he had was clearly anticipated by the Smith application, and in the view taken by the court, by the Peller buckle as well. The defendant's buckles are clearly infringements of claims 1, 2, 4, 5, and 6 of the Peller patent.

A decree may be entered upholding the validity of the complainant's patent under assignment from Peller, and holding the defendant as an infringer of the claims specified, with an accounting, and the costs of this action.