### WATERBURY BUCKLE CO. v. ASTON.

(Circuit Court of Appeals, Second Circuit. November 14, 1910.)

#### No. 34.

1.. PATENTS (§ 72*)—ANTICIPATION—IDENTITY OF INVENTION.

A patent cannot be invalidated by a structure which can only be altered into an anticipation by the use of inventive skill.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 86–91; Dec. Dig. § 72.*]

2. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—SUSPENDER BUCKLE.

The Peller patent, No. 847,811, for a suspender buckle, was not anticipated, and discloses patentable invention; also held infringed.

Appeal from the Circuit Court of the United States for the Eastern District of New York.

Suit in equity by the Waterbury Buckle Company against Walter F. Aston. Decree (172 Fed. 672) for complainant, and defendant appeals. Affirmed.

The appeal is from a decree sustaining complainant's letters patent No. 847,811 granted to Morris Peller, March 19, 1907, for an improvement in suspender buckles. The application was filed January 8, 1902. All of the six claims were upheld, but the third which was not in issue. The opinion of the Circuit Court was filed August 2, 1909, and is reported in 172 Fed. 672.

David J. Wagner and George A. Clement, for appellant.
George D. Seymour and Robert B. Killgore, for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

COXE, Circuit Judge. The patent relates to a suspender buckle. It is an exceedingly simple device, indeed its chief merit lies in its simplicity, cheapness and adaptability. The specification says:

"My invention relates to an improvement in that class of suspender-buckles called 'rustless' for the reason that the webbing is disposed so that the perspiration of the wearer is kept away from the metal, the object being to produce a simple, compact, effective, and convenient buckle constructed with particular reference to economy of webbing and to the avoidance of the production of any such humps or bunches of webbing upon the back of the webbed buckle as will interfere with the comfort of the wearer."

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The patentee seems to have hit upon the buckle which the public demands as demonstrated by its popularity and the fact that it has largely supplanted other buckles in the market.

The first claim, which is the broadest of those in controversy, will serve as an example of the others, and is as follows:

"1. In a rustless suspender-buckle, the combination with a frame having an upper and a lower side with an opening between the same, of a lever pivoted to the upper side of the frame in position to have its clamping edge coact with the upper edge or top of the lower side of the frame, and a piece of webbing having its lower reach attached to the lower side of the frame and its upper reach passed from front to rear through the said opening and engaged by the clamping edge of the lever which deflects it over or approximately over the upper edge or top of the lower side of the frame."

It is for a combination having the following elements in a suspender buckle, which must be rustless: First: A frame having an upper and lower side with an opening between the same. Second: A lever pivoted to the upper side of the frame in position to have its clamping edge coact with the upper edge or top of the lower side of the frame. Third: A piece of webbing having the lower reach attached to the lower side of the frame and its upper reach passed from front to rear through the said opening and engaged by the clamping edge of the lever which deflects it over, or approximately over, the upper edge or top of the lower side of the frame.

In short, the combination consists of three elements, a frame, a lever and a piece of webbing. The metal parts may in practice be reduced to two, as the sheet metal strap can be omitted and the frame bent to form a clasping edge, as shown in the patent to Smith of June 14, 1904, without departing from the substance of the invention. We thus have two pieces of steel and a piece of webbing so arranged as to produce a rustless lever buckle, no part of the metal coming into contact with the underwear of the user. Prior to the invention, in order to produce this result, it was necessary to use brass, which does not rust when brought in contact with perspiration, but this metal was much more expensive than steel and considerably increased the price of a pair of suspenders. The manufacturer who could use the cheaper metal without subjecting the clothing of the wearer to rust stains, would not only acquire an advantage over his competitors, but would also secure "the potentiality of becoming rich." And so it proved. The new rustless buckle took the market, the older forms of steel buckles being practically superseded. By the new device, the material, both metal and webbing, was reduced to the minimum, followed, of course, by a corresponding reduction in the cost, and the back of the buckle was completely protected without the "bunches or humps" referred to in the description.

The invention of Peller, like the rubber button in Frost v. Cohn (C. C.) 112 Fed. 1009, and 119 Fed. 505, 56 C. C. A. 185, and the collar button in Krementz v. Cottle, 148 U. S. 556, 13 Sup. Ct. 719, 37 L. Ed. 558, was one of those fortunate discoveries which seem obvious after it has been made. Peller has produced a device the value of which has been demonstrated not only by its popularity in the trade, but by the persistent contest in the patent office for the honor

of being its inventor. As was said by the Supreme Court in Topliff v. Topliff, 145 U. S. 156, 12 Sup. Ct. 825, 36 L. Ed. 658:

"While the question of patentable novelty in this device is by no means free from doubt, we are inclined, in view of the extensive use to which these springs have been put by manufacturers of wagons, to resolve that doubt in favor of the patentee and sustain the patent."

That the patent is not anticipated is conceded by the defendant's expert. He says:

"If you wish me to find a single illustration in any single reference which exactly agrees in all particulars with the device of the patent in suit I am free to state that I do not find it and I do not think there can be anything found in my previous testimony to the effect that I have claimed to find it.

"XQ. I understand you to admit that no patent and no exhibit discloses the particular thing set forth by claim 1 of the patent in suit. What I wish you to do now is to state for the information of the court and to simplify the consideration of the case by the court what one patent or exhibit comes the closest on the whole, taking everything into consideration to meeting claim 1 as you find it? A. The first part of your question is correct, and in reply to the latter part of your question I would again refer to the U. S. patent to La Chappelle, No. 485,104, as coming the nearest, all things considered, to the device of the patent in suit.

"XQ. Now, to save time, I will ask the same question as to claims 2, 4. 5 and 6 of the patent in suit? A. On the basis of your question and in my opinion the same reference applies to the other claims.

"XQ. Then in your opinion the La Chappelle patent No. 485,104 comes the closest on the whole taking everything into consideration in your opinion to meeting the invention of the patent in suit and the terms of claims 1, 2, 4. 5 and 6 of the patent in suit, out of all the exhibits in the case? A. It does."

It seems necessary, therefore, to examine only the La Chappelle patent. A diagram of the device of this patent will be found in the opinion of the Circuit Court. La Chappelle states that his object is—

"to produce an improved form of buckle that is especially adapted for use in suspenders; and it consists, mainly, in improved means of holding the web of the suspender securely without cutting or tearing it and of a secure and simple means for uniting the buttonholed ends of the buckle."

Evidently the patentee did not have the Peller concept. His was not a rustless buckle and was not designed to be such. A person skilled in the art, familiar with the complainant's buckle might, by removing the hooked part, reconstruct the La Chappelle device so that it would accomplish in an awkward manner the same result as Peller, but this is not enough. A patent cannot be invalidated by a structure which can only be altered into an anticipation by the use of inventive skill. There is nothing in the La Chappelle device to suggest the Peller device to the mechanic. It does not operate and was not intended to operate, in the same way and, without radical changes, it is incapable of producing the same result.

We have no doubt that the defendant infringes. The only appreciable difference between the defendant's buckle and those of the claims is that he has omitted the sheet metal strap which is specifically covered by claim 3, which is not involved in the present controversy. As before pointed out, the first claim and the other claims in controversy do not make this strap an element of the combination. The first

element of the first claim is a frame having an upper and lower side with an opening between them. In the drawings the metal strap is shown but it is not mentioned in the claim and is not essential to the combination. In other words, the drawings show the first element made in two pieces, but this does not make each of these pieces a separate element and thus enable one who has sufficient intelligence to make the frame in one piece, instead of two, to escape infringement. The first element of the claim is a frame and any one who uses it in combination with the other elements is an infringer whether the frame be composed of one piece or fifty. The buckle of the claim has two members composed of three pieces, the buckle of the defendant has two members composed of two pieces, this is the only difference.

We understand this to be conceded by the expert for the defendant. Speaking of the defendant's buckle, he says:

"The manner of webbing, the mode of gripping and the function performed are substantially the same as in the patent in suit. The buckle, however, is a two piece buckle and differs from the buckle of the patent in suit, which is a three piece buckle. The defendant's buckle is without a strap member."

We have already expressed the opinion that this strap is not an element of the claims in controversy. It is an element of claim 3, where it is specifically described. If it is to be regarded as part of the combination of the other claims, claim 3 is meaningless. There was no necessity for importing into that claim an element which was already there by implication. The interpretation which we give to the claims makes the patent sensible and consistent. It is unnecessary to attempt to unravel the complicated and labyrinthian interference proceedings in the Patent Office, as we are unable to perceive that they destroy the validity or limit the scope of the Peller invention. It is enough that Peller was the first in the office and, after a bitter contest with nine other applicants, the defendant being among them, he emerged therefrom with the patent in suit. The persistency shown by the others in their endeavor to wrest the invention from Peller is eloquent testimony of its meritorious character. The file wrappers of the patent in suit and of the Aston application were not printed in the record, but by stipulation between the parties the printing thereof was waived and the same were returned as exhibits. This was done without the consent of the court and we are under no obligation to receive them.

The writer has, however, examined them sufficiently to justify the conclusion that, with the exception of the excerpts therefrom printed in the record, the file wrappers throw very little light upon the present controversy.

The decree is affirmed with costs.