### WATERBURY BUCKLE CO. v. G. E. PRENTICE MFG. CO.

(Circuit Court of Appeals, Second Circuit. December 11, 1922.)

No. 129.

1. Patents ⟐191—Do not imply right to make or sell.

A "patent" is not a grant of a right to make, use, or sell, and does not directly or indirectly imply any such right, but grants only the right to exclude others.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Patent.]

2. Patents ⟐1—Granted in consideration of disclosure of secret invention.

A patent is granted in consideration of the information or disclosure afforded by the patentee of the details of a new and theretofore secret improvement in an art.

⟐For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. Patents &⇒303—Whether expired patent permitted manufacture of alleged infringing article held question for final hearing.

Where defendant claimed that his article was manufactured in the exact form shown by a patent which had expired, while plaintiff claimed an infringement of a subsequent patent issued to its assignor, the question presents a matter to be considered at final hearing, and not on motion for preliminary injunction.

4. Patents &⇒303—Debatable question as to anticipation not decided until final hearing.

Even though plaintiff's patent had been held valid in another suit, a debatable question raised by defendant as to its anticipation by a patent not considered in the other suit warrants the court in the exercise of his discretion in refusing an injunction and postponing the determination of that question until the final hearing.

5. Patents &⇒303—Defense, substituted specifications and claims were not sworn to, should be determined on final hearing.

In a suit for infringement of a patent, the defense that the substituted specifications and claims which were issued contained new matter and were not sworn to, so that the patent was invalid, presents a question which can be postponed until the final hearing and not determined on motion for preliminary injunction.

Appeal from the District Court of the United States for the District of Connecticut.

Suit in equity by the Waterbury Buckle Company against the G. E. Prentice Manufacturing Company for infringement of a patent. From an order denying an application for preliminary injunction, plaintiff appeals. Affirmed.

George D. Seymour, of New Haven, Conn. (A. Parker-Smith, of New York City, and George D. Seymour, of New Haven, Conn., of counsel), for appellant.

Roberts, Roberts & Cushman, of Boston, Mass. (Robert Cushman, of Boston, Mass., of counsel), for appellee.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

MANTON, Circuit Judge. The appellant sues for infringement of patent No. 847,811 dated March 19, 1907, for a suspender buckle. The patent was sustained in this court in Waterbury v. Aston, 183 Fed. 120, 105 C. C. A. 410. The appellant moved for a preliminary injunction on affidavits, and the appellee interposed an affidavit in defense alleging: First, that the appellant was making the exact form of buckle shown in the expired patent to Dwight L. Smith, No. 762,662, dated June 14, 1904, and issued to the appellant as assignee and, consequently, had the legal right so to do because the Smith patent is now public property; second, that the patent in suit is invalid because of anticipation by patents of the prior art; and, third, that the patent in suit is invalid because the claims thereof and the specifications were substituted specifications and claims inserted by the appellant through his attorney in place of the original specifications and claims, and not supported by a supplemental oath. It is contended that the elements and idea of the appellant's Peller patent are included in the Smith patent, and that the Smith patent, having expired, by making its buckle the appellee cannot

be held to infringe the Peller buckle because of these facts. The court below held that the Peller buckle differs from the Smith buckle in that the former contains no downward projection midway of the lower side of the frame. The Peller patent shows a form of buckle in which there is a frame having an upper and lower side with an opening between the same, a lever pivoted to the upper side of the frame in position to having its clamping edge coact with the upper edge or top of the lower side of the frame, and a piece of webbing, having its lower reach attached to the lower side of the frame and its upper reach passed from front to rear through the said opening and engaging by the clamping edge of the lever which deflects it over or approximately over the upper edge or attached to the lower side of the frame.

[1] The Smith patent consists in providing a specific form of frame. Smith bends his wire in more closely to the clamping edge of the lever so that this portion of the wire frame coacts with the clamping edge of the lever and then bends the wire downward in the form of a loop to produce a narrow extension for holding the buckle straight, and this narrow extension performs the duty of the wider lower part and particular form of buckle shown in the Peller patent. The Smith patent has (a) a frame, (b) a lever, (c) webbing, and (d) the downward projection on the frame. And the Peller patent has a combination of the frame, the lever, and the webbing. Both buckles operate in the same way to produce exactly the same result and employ the exact combination of co-operating elements. The omission of Peller's separate crossbar and the substitution thereof for the bent wire lower frame of the Smith patent has been held not to be departing from the substance of the invention. Waterbury Co. v. Aston, supra. The Smith patent is an improvement on the generic form of buckle claimed in the Peller patent. The improvement may be defined there as consisting, in addition to the Smith downwardly depending loop to the straight side frame, of the Peller buckle whereby greater certainty of holding the buckle straight between the folds of the webbing is secured, or it may be defined as consisting in the substitution of one specific form of lower frame composed of the parts 2 and 5 in the Peller buckle, for under the specific form of the lower part of the frame, which latter specified form is composed of a single bent wire as shown in the drawing in the Smith patent. The Smith patent does not claim the broad form of invention, because that was broadly the invention of Morris Peller and shown and described in his pending application filed January 8, 1902, serially numbered 88,854. A subsidiary invention, which is an improvement on a generic invention because it uses the combination and elements disclosed in the generic patent and adds thereto an additional element, is common and well known as covered by improvement patents. Allington & Curtis Mfg. Co. v. Globe Co. (C. C.) 89 Fed. 868. A patent is not a grant of a right to make, use, or sell. It does not directly or indirectly imply any such right. It grants only the right to exclude others. Bloomer v. McQuewan, 14 How. (55 U. S.) 539, 14 L. Ed. 532; United Shoe Machinery Co. v. United States, 258 U. S. 451, 42 Sup. Ct. 363, 66 L. Ed. ——.

[2] A patent is granted by the government in consideration of an

exchange for the information or disclosure afforded by the patentee of details of a new and therefore secret improvement in the art, and this disclosure, or information is embodied in the specifications, the filing of which is a necessary condition precedent to the grant of the patent. The consideration for the grant is a complete disclosure by the inventor of his invention, so that when the statutory right to exclude others from the use of that invention has expired, the public generally may exercise its natural rights to make, use, and sell anything of which it has sufficient knowledge, provided, of course, that this natural right is not temporarily restrained by some other existing patent or permanently restrained for some other legal reason.

[3] We think that the Smith patent having expired, the monopoly granted during the 17 years no longer affected or restricted the public in the use of the idea or inventive thought disclosed, and the public is at liberty to use the information derived from the publication of the Smith specifications, provided that by so doing they did not infringe some other valid patent still in force or upon any other restrictive law or ordinance. But the patent in suit having still, at the time of the commencement of the action, some time to run, must be respected, and the rights thus accorded to the appellant must be protected. These are matters to be considered at final hearing.

[4, 5] In the defense offered, the Ziegler patent, No. 555,277, dated February 25, 1895, is cited as an anticipation. The Ziegler buckle was manufactured and sold for many years before the Peller invention. This was not before the court when the Aston Case was considered. A debatable question such as ought to be determined at final hearing is presented as to whether or not the Ziegler buckle was an anticipation. We think this ought not to be decided on this application, but the validity of this defense should be considered at final hearing. In the exercise of his discretion, the district judge could properly refuse an injunction and await the determination of this question of fact for the proofs at final hearing. As to the defense that the patent is invalid because the claims thereof and specifications were substituted specifications, and the claims inserted by the patentee through his attorney in the place of the original specifications and claims and is not supported by the supplemental oath. We think that these are matters which may be inquired into at final hearing, and that the District Court, in the exercise of its judicial discretion, did not commit error in refusing a preliminary injunction. George Cutter Co. v. Metropolitan Electric Mfg. Co. (C. C. A.) 275 Fed. 158.

For these reasons the order denying the motion for a preliminary injunction is affirmed.