## WATERBURY BUCKLE CO. v. G. E. PRENTICE MFG. CO.

(District Court, D. Connecticut. December 18, 1923.)

No. 1598.

1. Patents ⊛328—847,811, for suspender buckle, held valid and infringed.

The Peller patent, No. 847,811, for a rustless suspender buckle, *held* valid, infringed, and not anticipated.

2. Patents ⊛297(2)—Doctrine of stare decisis applicable to patent cases.

The general doctrine of stare decisis is applicable in a peculiar sense to patent cases, in which the validity of a patent which has been once adjudged is brought again in question.

3. Patents ⊛297(2)—Defense pleaded in prior case presumed considered under rule of stare decisis.

Where the validity of a patent was sustained, though defendant pleaded lack of a supplemental oath, in a subsequent suit involving the validity of the same patent the court must assume that that defense has been considered, and apply the rule of stare decisis.

4. Patents ⊛328—Separate patents for suspender buckle held not to cover same invention.

The Peller patent, No. 847,811, for a rustless suspender buckle, and Smith patent, No. 762,662, also for a suspender buckle, *held* not to cover the same invention.

5. Patents ⊛120—Assignee of separate patents held not same patentee.

Where each of two patents were issued to different persons, and both patents were assigned to the same corporation, that corporation is not the same patentee.

6. Patents ⊛120—Test as to "double patenting" stated.

The test respecting "double patenting" is whether the claims of both patents, when properly construed in the light of the descriptions given, define essentially the same things.

7. Patents ⊛131—Expiration of patent overshadowed by subsequent patent does not confer right on public to manufacture article covered by first patent.

Where a patent limited to a specific form of suspender buckle was issued to one inventor, and later another patent of a more general nature, which overshadowed the first patent, was issued to another inventor, and both patents were assigned to the same corporation, expiration of the first patent does not give the public a right to manufacture the buckle devised by the first patentee.

8. Injunction ⊛158—Decision on preliminary injunction hearing not conclusive as to merits.

A decision on a preliminary injunction hearing that, on the showing made plaintiff was not entitled to the relief sought, does not foreclose any substantive right of either party on the merits of the case at final hearing.

9. Patents ⊛1—General statement of rights of patentee and public.

A patentee gets the privilege to exclude the public from its common-law right for a definite term, and the public gets the advantage of a disclosure of something new, which inventor might otherwise have kept secret.

In Equity. Suit by the Waterbury Buckle Company against the G. E. Prentice Manufacturing Company. Decree for complainant.

A. Parker-Smith, of New York City, and George D. Seymour, of New Haven, Conn., for plaintiff.

Robert Cushman, of Boston, Mass, for defendant.

⊛For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

THOMAS, District Judge. This is a suit brought to restrain the infringement of letters patent No. 847,811, issued March 19, 1907, to the plaintiff on the application of Morris Peller for an improvement in suspender buckles. On June 14, 1904, there was also issued to Dwight L. Smith patent No. 762,662, which was duly assigned to the plaintiff. This was also for a suspender buckle and expired June 14, 1921.

The plaintiff is engaged in the manufacture of buckles in Waterbury and the defendant is engaged, at Berlin, Conn., in the manufacture of small hardware, buckles, sheet metal, and wire goods. Suspender buckles are sold to suspender makers, who buy the webbing and the buckles and make them up into suspenders. The validity of the patent in suit was upheld by Judge Chatfield in Waterbury Buckle Co. v. Aston, 172 Fed. 672, in 1909, and his conclusions were affirmed by the Circuit Court of Appeals for the Second Circuit in 183 Fed. 120, 105 C. C. A. 410.

Shortly after this suit was brought the plaintiff brought on a motion for a preliminary injunction and asserted its right to the injunction on the prior adjudications of the patent above noted sustaining its validity. The motion for preliminary injunction was denied August 10, 1922, largely upon the theory that no irreparable injury would follow its denial, as the defendant was of sufficient financial responsibility to answer for any damage the plaintiff could suffer, if the court should decide at final hearing that the defendant infringed. Besides, the defendant had interposed certain defenses which it claimed were not before the courts in the Aston Case, supra, and this court ruled that it could not, on motion for preliminary injunction, consider the case on its merits, but at final hearing. Upon appeal to the Circuit Court of Appeals the denial of the temporary injunction was sustained. 286 Fed. 358.

[1] The defendant relies on the following defenses: (1) The invalidity of the Peller patent upon anticipations not before the court in the Aston Case. (2) The invalidity of the Peller patent for lack of the necessary statutory oath. (3) The invalidity of the Peller patent for double patenting. (4) The legal right of the defendant as a member of the public, after the expiration of the Smith patent, to make the exact form of buckle patented to the plaintiff by the Smith patent.

The defendant insists that none of these points was considered by the court in the Aston Case, supra, when the court sustained the Peller patent. None of these points, says the defendant, was adjudicated by the Circuit Court of Appeals in sustaining the order denying a preliminary injunction in the present case, but all were left to be considered at final hearing. The defendant claims that the whole case is now open for adjudication on the merits. Any intelligent discussion of the case as it now stands must contemplate a history of the Peller and Smith patents, as well as an analysis of the decisions respecting them. As these decisions are directed to the identical subject-matter now before the court, they must necessarily have persuasive effect upon the conclusions to be here reached.

Throughout the proceedings in the Patent Office Peller's application met with numerous and vigorous interferences. It is not now necessary to consider them, other than to say that Smith was one of the parties to the interference proceedings. His application was filed February 14, 1902, while Peller's was filed January 8, 1902. Smith did not claim to be the inventor of the "rustless buckle," with the details of construction and combination of parts shown in Peller. He acknowledged this to be Peller's invention. But Smith claimed an improvement over the Peller buckle. Judge Chatfield, in the Aston Case, supra, held that everything patentable in Smith was disclosed by the Peller buckle.

Claim 1 of the patent in suit is typical, and sufficiently defines the alleged invention. It reads:

"In a rustless suspender buckle, the combination with a frame having an upper and a lower side, with an opening between the same, of a lever pivoted to the upper side of the frame in position to have its clamping edge coact with the upper edge or top of the lower side of the frame, and a piece of webbing having its lower reach attached to the lower side of the frame and its upper reach passed from front to rear through the said opening and engaged by the clamping edge of the lever which deflects it over or approximately over the upper edge or top of the lower side of the frame."

Peller's patent describes a buckle frame consisting of a single length of bent wire and a sheet metal strap. It is for a combination having, in a suspender buckle, which must be rustless, the following elements: (1) A frame having an upper and lower side with an opening between the same. (2) A lever pivoted to the upper side of the frame in position to have its clamping coact with the top of the lower side of the frame. (3) A piece of webbing having its lower reach attached to the lower side of the frame and its upper reach passed from front to rear through the said opening and engaged by the clamping edge of the lever which deflects it over or approximately over the upper edge or top of the lower side of the frame.

In short, the combination consists of three elements, a frame, a lever, and a piece of webbing, as was stated by Judge Coxe in the Aston Case.

[2] The defendant's first defense respecting the prior art was reviewed by Judge Chatfield, except for certain references which were not before him, but which are offered here for the first time as anticipations of the Peller buckle. All of them have been carefully examined, but I conclude that only the patents to Ziegler, No. 555,277, and to Adams, No. 496,630, are sufficiently pertinent to merit discussion. All the others are either too remote or have been disposed of in the prior litigation. As to those already passed upon by Judge Chatfield and the Circuit Court of Appeals affecting the validity of the patent in suit, the rule in Todd Protectograph Co. v. New Era Mfg. Co. (D. C.) 236 Fed. 768, is particularly pertinent and is supported, not only by reason and common sense, but by a long line of decisions. Judge Dickinson said on page 769:

"No one, of course, would be heard to assert that the determination of one case under its facts precludes another defendant from asserting his rights under a different state of facts. When, however, we are outside the domain

of facts, and the law of a case has been once determined and settled, that law is no law unless it is of universal application, and the principles of its application are thereafter followed in all cases. The general doctrine of stare decisis is applicable in a peculiar sense to patent cases in which the validity of a patent, which has been once adjudged, is brought again in question. To gain an appellate effect by the bringing of a second action in the mere guise of a new action through the simple expedient of introducing a second infringer is an effort which ought not to be countenanced. This is so obvious that the principle is self-supporting, and is, of course, frankly accepted by counsel for defendant."

See, also, Chief Justice Taft's opinion when sitting as Circuit Judge in Allington & Curtis Mfg. Co. v. Globe Co. (C. C.) 89 Fed. 865, and the opinion of Judge Dickinson in Concrete Appliances Co. v. Gomery (D. C.) 284 Fed. 518, 521.

Applying the doctrine so clearly enunciated in the above decisions, which is so firmly fixed in the patent law, it follows here that, unless Ziegler or Adams anticipate Peller, the validity of the patent in suit must be upheld so far as anticipation is concerned.

### The Ziegler Patent.

It was granted February 26, 1896, on an application filed July 1, 1895. The plaintiff claims it was cited by the Examiner on March 13, 1902, with reference to the Smith buckle. Nevertheless it was not before Judge Chatfield, and the decision of the Circuit Court of Appeals on the appeal in this case from the denial of the preliminary injunction suggests that it should now be considered.

An examination of Ziegler's testimony, his patent, and buckle, in evidence as Exhibit 6, shows that the buckle manufactured under his patent was not a "rustless buckle." Ziegler applied the webbing as illustrated in his patent, looping the fixed end of the webbing through the lower slot of the frame, and passed the running reach of the webbing first from front to rear through the middle of the slot. Ziegler's buckle left part of the metal exposed to contact with the perspiration of the user. This buckle would not be rustless, if made of cheap metal. Only when made of brass, or some other rustless metal, could it meet the requirement of being rustless; but the use of such metals would necessarily increase the cost of manufacture. The necessity of using brass, or some other comparatively expensive metal, was eliminated by Pellar. His buckle was more economical, as it required only an inexpensive metal, a smaller quantity of it, and a less amount of webbing, all of which tended to make possible a cheaper production cost for suspenders.

Since Ziegler, in his testimony, in effect said that he did not have the rustless idea in mind, aside from using the more expensive rustless metal, and as Peller's idea, which resulted in his invention, was a "rustless buckle," made rustless, not by the character of the metal used, but by the construction of the buckle, by which the webbing is disposed so that the perspiration of the wearer is kept away from the metal, I must and do conclude that Ziegler did not anticipate. Nor am I persuaded by the fact that, after the idea was suggested, a change in webbing by Ziegler might produce a rustless buckle with a cheap

metal. It is a makeshift at best, and, if anything, testifies to the usefulness and invention of Peller's idea. It seems to me that Judge Coxe's comment on this feature of the case precludes any other conclusion. He said (183 Fed. 121, 105 C. C. A. 411):

"The invention of Peller, like the rubber button in Frost v. Cohn (C. C.) 112 Fed. 1009, and 119 Fed. 505, 56 C. C. A. 185, and the collar button in Krementz v. Cottle, 148 U. S. 556, 13 Sup. Ct. 719, 37 L. Ed. 558, was one of those fortunate discoveries which seem obvious after it has been made."

## The Adams Patent.

There were three buckles offered in evidence as exhibiting the device of this patent, Exhibits 18, 20, and 21. The first two were original buckles, but the last one, the most important, and the one alleged to have been manufactured in much greater quantities than the other two purports to be a reproduction of the original, and made up for use at this trial. It cannot be seriously contended that Exhibits 18 and 20 anticipate Peller, as even a cursory examination of them reveals that they do not.

Exhibit 21 is, perhaps, the closest approach to an illustration of the Peller invention of anything presented in defense of this suit. Mr. Prentice, the president and general manager of the defendant, testified that buckles like Exhibit 21 were made in the '90's in quantities when he was employed by Traut & Hine Company, of New Britain, the manufacturer of them, and that ten times as many buckles like Exhibit 21 were made as like Exhibits 18 and 20. This buckle was offered without any corroboration as to its date or as to its accuracy as a reproduction of its alleged commercially made predecessors, or as to whom sold and by whom threaded, as shown in the exhibit. On the other hand, Moore, who was also employed by the Traut & Hine Company in the '90's and at the same time Mr. Prentice was in their employ, and whose name appears as a witness on the Adams patent (Exhibit 19), testified as follows:

"XQ. 242. Don't you remember the buckle made by Traut & Hine about 1895, like Exhibit 21? A. I remember very clearly Exhibit 18, but I never saw a buckle like this hand-made model that Mr. Prentice has submitted—Exhibit 21—that I can remember, and I was familiar with their work at that time."

Under this testimony the rule stated by Judge Learned Hand in Kalamazoo Loose Leaf Binder Co. v. Wilson Jones L. L. Co. (D. C.) 286 Fed. 715, at page 717, is not only applicable, but quite pertinent:

"Nevertheless, although I have really no doubt that this was in fact done, I think the proof scarcely comes up to the severe standard imposed in such cases. There is no documentary corroboration of it, and the testimony of the witnesses, though unimpeached, is not supported by any circumstances which put it beyond the inevitable infirmities of their recollection. The most recent declaration of the Supreme Court, in Symington v. Nat. Castings Co., 250 U. S. 383, 39 Sup. Ct. 542, 63 L. Ed. 1045, shows no disposition to relax the well-established canon, and I decline to consider the use as proved."

And in a very recent case Chief Justice Taft, in Eibel Process Co. v. Minnesota & Ontario Paper Co., decided February 19, 1923, reported in 43 Sup. Ct. 322, said on page 327 (67 L. Ed. 523):

"The oral evidence on this point falls far short of being enough to overcome the presumption of novelty from the granting of the patent. The temptation to remember in such cases and the ease with which honest witnesses can convince themselves after many years of having had a conception at the basis of a valuable patent, are well known in this branch of law, and have properly led to a rule that evidence to prove prior discovery must be clear and satisfactory. Barber Wire Patent Case, 143 U. S. 275, 284, 12 Sup. Ct. 443, 36 L. Ed. 154, 58 O. G. 1555; Loom Co. v. Higgins, 105 U. S. 580, 591, 26 L. Ed. 1177; 21 O. G. 2031. Indeed, when we consider the indisputable fact that Eibel's successful experiment at Rhinelander and his application for a patent surprised the whole paper trade, and that for a short time many held back from risking so radical a change and then all adopted it, oral evidence that some persons had discovered the source of trouble and the means of remedying it some years before Eibel is incredible."

In view of the fact that the validity of the Peller patent has been sustained by the Circuit Court of Appeals for this circuit, and the decisions above cited declaring the rule of evidence concerning the showing a litigant must make, one should be very reluctant to declare this patent invalid on a single reference of the kind here presented, where there is no corroborative proof or documentary evidence to substantiate a claim that a buckle such as Exhibit 21 was actually made and marketed under a patent issued many years before the application for the patent in suit was filed. To invalidate a patent under such circumstances as are here presented would open the door to an evil which could not be tolerated.

Nevertheless, as the defendant seriously urges a consideration of this reference, I have examined with considerable care Exhibit 21, and have concluded that, even though the testimony met the exactness of the rule laid down in the above-cited cases, the process of its double webbing and triple bar and the use for which it was intended, it would not anticipate Peller. It would also seem impracticable for use as a suspender buckle, because it lacks sufficient space to accommodate a double thickness of webbing. The buckle, as represented by Exhibit 21, was used principally for ladies' and children's side garters for holding up stockings. In fact, Adams in his patent says that he has invented improvement in "slides and cast-offs for garment supporters." Later on in the specification he speaks of the "slides now employed on garment supporters, particularly stocking supporters," and again he says, speaking of the object of the invention, it is "to provide a slide with a cast-off device, adapting it for use more especially on ladies' and children's stocking supporters." His patent he denominates a "garment supporter."

This buckle might, with alteration, meet the objection of lack of space for the webbing; but what was said on this point concerning the Ziegler buckle applies with equal force here. The further fact that the Peller buckle has withstood the test until the present time, and the popular success it has achieved makes it still further doubtful that the Adams buckle, as a possible suspender buckle, anticipates Peller.

[3] The defendant's second defense, alleging invalidity for lack of the necessary statutory oath, seems to me to fall within the rule of stare decisis to which reference has already been made. In the

Aston Case the defendant pleaded the lack of supplemental oath. The patent was held valid, and I must therefore assume that the District Court and the Circuit Court of Appeals considered this defense. From the concluding paragraphs of Judge Coxe's opinion it is clear that he examined and sufficiently familiarized himself with the history of the interference, and with the file wrapper, to satisfy himself that there was no technical flaw in Peller's patent, and yet, in view of this defense having been pleaded and considered, both courts held the patent valid. What Judge Mack said, in speaking for the Circuit Court of Appeals for the Seventh Circuit in Freeman-Sweet Co. v. Luminous Co., 264 Fed. 107, at page 108, is pertinent here:

"This former decision, to which these appellants were not parties, is, of course, not res adjudicata as to them. But it is more than persuasive; the validity of a patent, once sustained on appeal by this court, is not subject to complete re-examination at the instance of each subsequent alleged infringer. Unless clearly shown to be erroneous, the determination by this court of the validity of a patent on full hearing in a contested suit will not be reconsidered. New matter, not theretofore introduced in evidence, and not merely cumulative in character, will be given full consideration; even the conclusions reached on the former evidence may be challenged as clearly erroneous. But the fact that alleged anticipating patents, or the file wrapper and contents, though in the record, are not specifically discussed in the earlier opinion, is of course, far from a demonstration, or even a suggestion, that they were not duly weighed or that the conclusions reached on the former record are clearly wrong."

To the same effect is Lau Ow Bew v. U. S., 47 Fed. 641, 1 C. C. A. 1.

The principles enunciated by Judge Coxe in Beach v. American Box Machine Co. (C. C.) 63 Fed. 597, and affirmed in 71 Fed. 420, 18 C. C. A. 165, bear with force upon this defense. In holding that no supplemental oath was necessary he said:

"A new oath was not necessary, because the amendments introduced no new invention. Nothing in the rules of practice of the Patent Office or the law required it."

Much reliance is placed by defendant on George Cutter Co. v. Metropolitan Electric Mfg. Co., 275 Fed. 158, a recent decision of the Circuit Court of Appeals, to support its contention that this patent should be declared void for lack of the necessary statutory oath, but the facts here do not fall within the ruling made there. The test is whether the claims which are substituted, and not sworn to, introduced a new invention over the cancelled claims. Here the claims are not for a different invention than that originally claimed and sworn to by Peller. The claims in suit cover the same subject-matter as Peller's original claim 3. With this distinction noted, the doctrine of the cases cited above are applicable, and the doctrine of the Cutter Case does not apply.

[4] For a third defense, the defendant urges that the patent in suit is void for double patenting. The rule affecting this subject is stated, as defendant urges, in Miller v. Eagle Manufacturing Co., 151 U. S. 186, 14 Sup. Ct. 310, 38 L. Ed. 121. There the court held that a patentee cannot take out two patents covering the same

invention. Two essential things relating to double patents are considered in the opinion. The court further held that no patent can issue for an invention actually covered by a former patent especially to the same patentee, although the terms of the patent may differ. It was also held that a second patent may be granted to an inventor for an improvement protected by the first; but this can only be done when the new invention is distinct from or independent of the former one.

[5] The two patents to Smith and Peller were not issued to one patentee. The fact that the patents were ultimately assigned to one and the same corporation does not, by any manner of means, make that corporation the same patentee. In the ordinary course of events it is quite natural that a corporation manufacturing under one patent would attempt to acquire any subsequent improvement patent issued, particularly if it has established, at some expense to itself, a market for its product.

[6] The test, however, respecting double patenting, as disclosed in the decisions, is whether the claims of both patents, when properly construed in the light of the descriptions given, define essentially the same thing. The Smith and Peller patents do not cover the same thing. Comparison of the Smith and Peller patents was made by Judge Manton when this case was before the Circuit Court of Appeals on appeal from this court's order denying the preliminary injunction. The analysis he made of both patents clearly differentiates the two, and shows that they differ essentially and that they are not the same invention.

The authorities cited by both sides are exhaustive, as well as helpful, and it is impossible to analyze all of them; but the cases which are pertinent to this question, together with the prior decisions of the Circuit Court of Appeals, impel the conclusion that this defense should not prevail.

[7] This brings us to the last, and perhaps the cardinal, feature of this case, and that is the question of the legal right of the defendant, as one of the public, after the expiration of the Smith patent, to make the exact form of buckle shown in that patent. To deny that right, the defendant asserts, will defeat the statute and prolong the monopoly. This is forcibly stressed by the defendant, in view of its assertion that it is manufacturing only the buckle devised by Smith, and on which the patent has expired. While the solution of this problem presents some difficulty, in reaching the conclusion I do, I am not unmindful of this court's previous decision on the motion for preliminary injunction. I have again reviewed Thomson-Houston Electric Co. v. Illinois Telephone Construction Co. et al. (C. C.) 143 Fed. 534, to which reference was made in my previous memorandum, to the effect that, at the expiration of a patent for a combination, the use of such combination becomes free to the public, notwithstanding the fact that it contains as one of its elements a device covered by another patent which has not expired.

[8] As already noted, the hearing on the preliminary injunction was confined to the precise question then presented, and that was

whether, on the showing made, the plaintiff was entitled to the relief sought. In holding that it was not, no substantive right of either party, on the merits of the case at final hearing, was foreclosed in the proceeding. Moreover, on the appeal, Judge Manton, writing the opinion for the Circuit Court of Appeals properly directs attention to the fact that (286 Fed. 361):

"The patent in suit having still, at the time of the commencement of the action, some time to run, must be respected, and the rights thus accorded to the appellant must be protected. These are matters to be considered at final hearing."

Such, then, is the law of this feature of the case. The inquiry, therefore, suggests itself as to whether or not the defendant is infringing or has infringed the patent in suit. Judge Kohlsaat's opinion in the Thomson-Houston v. Illinois Telephone Case, supra, was likewise on preliminary injunction. This court concedes that, in a certain statement of the law contained in the memorandum filed on the motion for preliminary injunction, it fell into error; but, as above noted, no substantive right of either party was thereby foreclosed. In that memorandum, this court started out with the assumption that a patent right grants a positive right to the patentee to make, use, and sell his invention, and that one of the considerations for the grant of this right is that the patentee shall transfer to the public, or give up to the jublic, this positive right when the patent expires. This was error, as is pointed out by Judge Manton in his opinion on pages 360 and 361 of 286 Fed., where he said:

"A patent is granted by the government in consideration of an exchange for the information or disclosure afforded by the patentee of details of a new and therefore secret improvement in the art, and this disclosure, or information is embodied in the specifications, the filing of which is a necessary condition precedent to the grant of the patent. The consideration for the grant is a complete disclosure by the inventor of his invention, so that when the statutory right to exclude others from the use of that invention has expired, the public generally may exercise its natural rights to make, use, and sell anything of which it has sufficient knowledge, provided, of course, that this natural right is not temporarily restrained by some other existing patent or permanently restrained for some other legal reason."

The principle involved is stated by Chief Justice Marshall in Grant v. Raymond, 6 Pet. 218, at page 247 (8 L. Ed. 376). He said:

"The third section requires, as preliminary to a patent, a correct specification and description of the thing discovered. This is necessary, in order to give the public, after the privilege shall expire, the advantage for which the privilege is allowed, and is the foundation of the power to issue the patent."

[9] This is the true analysis of the situation. The inventor gets the privilege to exclude the public from its common-law rights for a definite term. The public gets the advantage of a disclosure of something new, which the inventor might otherwise have kept secret.

Defendant's reasoning also does not apply because plaintiff here has made no "bargain with the public." The bargain was made with the patentee Smith. He made the disclosure of his specific form of buckle, and thereby acquired a right to his limited monopoly. His

rights were passed to plaintiff, but plaintiff has made no bargain whatever with the public, which can stop it from enforcing the broader rights it acquired from Peller. If Smith had bought the Peller patent, he would not have been estopped from enforcing it to the end of its term. If Peller had retained his rights, they could not have been limited by the patent to Smith. No more can they be curtailed because he transferred them to the plaintiff corporation. The bargain for a 17-year monopoly made by Peller is binding on the public, no matter who succeeds to Peller's rights as fixed by such bargain.

The subsequent citation by the plaintiff on appeal, of Thomson-Houston Electric Co. v. Sunday Creek Co., an unreported case, but printed in the appendix of the plaintiff's brief on appeal, sheds a different light on the subject. In that case, Judge Cross, in writing the opinion of the Circuit Court for the District of New Jersey, carefully analyzed Judge Kohlsaat's opinion in the Thomson-Houston Case, and concludes as follows:

"But, however that may be, I am not convinced that the expiration of the improvement patents throw open to the public the right to use the patent in suit to the extent the defendant claims. Whatever was claimed by the expired patent is open to public use, but nothing more. And if such use trenches upon the claims of an existing generic patent, then a license must be obtained from the holder of the existing patent, or such case use will be enjoined."

Plaintiff's argument on this point, as disclosed in its brief before the Circuit Court of Appeals, is logical, and the conclusion I reach, therefore, is that Peller's invention overshadows the Smith patent. Peller's patent having been adjudicated valid, he is entitled to the 17-year monopoly under it. The manufacturer of the Smith buckle, although the patent on it has expired, must be enjoined until the expiration of the Peller patent, since the making of the Smith buckle infringes the Peller patent.

There may be the usual decree in favor of plaintiff, for an injunction and an accounting, with costs to abide the event; and it is so ordered.